**W. Wallace ANDERSON, Plaintiff,**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Defendant.**

**Civ. A. No. 912.**

United States District Court
M. D. Georgia,
at Columbus.

Oct. 10, 1962.

922

Richter & Birdsong, LaGrange, Ga., W. Ken Askew, Pine Mountain, Ga., for plaintiff.

Foley, Chappell, Young & Hollis, Bentley H. Chappell, Columbus, Ga., for defendant.

ELLIOTT, District Judge.

This action was brought in this court by a Georgia citizen with alleged jurisdiction being based on diversity of citizenship of the parties. The defendant challenges the existence of such diversity by a motion to dismiss plaintiff's complaint. Except for the ground claimed there does not appear to be any other basis for federal jurisdiction. The defendant alleges that its principal place of business is in Georgia. The plaintiff contends that it is elsewhere. The 1958 amendment to Title 28 U.S.C.A. § 1332

(c) provides: "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The defendant is a New York corporation, so the question whether this court has jurisdiction turns upon a determination of the actual principal place of business of the defendant.

Counsel for the plaintiff have insisted that the issue presented is one which should be submitted to a jury for determination. Counsel for the defendant contend that it is a question which should be determined by the court without reference to a jury.

If Georgia law does require the submission of this question to a jury as contended by plaintiff, this would not mean that such procedure must be followed here, for although a state-created right may be enforced in a federal court because of diversity of citizenship, the federal court will proceed by its own rules of procedure, and these are not necessarily identical with those of the state in which the federal court is sitting. Odekirk v. Sears, Roebuck & Co., 274 F.2d 441, 445, 7th Cir. (1960). It is true that in such diversity cases all substantive matters are controlled by state law, but purely procedural matters which do not affect the substantive rights of the parties are controlled by federal law. Rensing v. Turner Aviation Corporation, 166 F.Supp. 790, 793, D.C.N.D.Ill. (1958); Brookshire v. Penn. R. R. Co., D.C., 14 F.R.D. 154.

The generally accepted view in the federal courts is that the court may in its discretion decide the issue of diversity or it may submit the question to a jury for decision. Seideman v. Hamilton, 275 F.2d 224, 226, 3rd Cir. (1960); Guarantee Trust Company v. Collings, 76 F.2d 870, 3rd Cir. (1935); and the preferred practice in recent years has been for the court to decide jurisdictional questions without a jury. Guarantee Trust Company v. Collings, supra (1935); Taylor v. Hubbell, 188 F.2d 106, 9th Cir., (1951); Munro v. Doherr, 156 F.Supp.

723, D.C.D.Mass. (1957). The Circuit Court of Appeals of the Fifth Circuit has stated that the parties do not have a right to have the jurisdictional issue tried by a jury and has commented that the normal and usual procedure is for such matters to be determined by the judge. Hardin v. McAvoy, 216 F.2d 399, 403, 5th Cir. (1954).

■ In passing we might point out that this court has heretofore followed the practice of determining the location of a party's "principal place of business" without referring the question to a jury, and we think it is particularly appropriate that we do so when, as in this case, there is no real contest between the parties as to the basic facts upon which a determination must be made, but only as to how the statute should be interpreted in the light of these facts. Accordingly, this matter will not be referred to a jury and we will proceed to a determination of the issue based upon the evidence before the court, which consists of affidavits and answers to interrogatories, counsel for both parties having been heard in oral argument with respect thereto.

■ The present action was commenced in April, 1962 and jurisdictional facts existing at that time must furnish the basis of the court's conclusion as to the defendant's principal place of business. The parties have stipulated that while some of the evidence before the court relates to facts existing as of other dates, such matter shall be deemed to be accurately representative of the situation existing on the date on which this action was filed.

The court finds that the defendant is a New York corporation and that all of its common stock is owned by American Telephone & Telegraph Company, which is a New York corporation. The company is engaged in the business of furnishing communications services, mainly local and toll telephone service, in the states of Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina and Tennessee. The company has 7,769,815 telephones in service and more of these are located in Georgia than in any other state with the exception of Florida.[1] The company maintains 41,825,599 miles of telephone and telegraph lines and more of these lines are located in Georgia than in any other state with the exception of Florida. The company has 64,007 employees and more of these are employed in Georgia than in any other state with the exception of Florida. The executive offices of the company are maintained in Atlanta, Georgia and all of the executive officers of the company (other than the exceptions hereafter mentioned) have their offices in that city. These include the President, two Vice Presidents in charge of operations, a Vice President in charge of comptroller activities, a Vice President in charge of revenue requirements, a Vice President in charge of marketing, a Vice President in charge of personnel, a Vice President in charge of public relations, a Vice President and General Counsel in charge of legal matters, the corporate Secretary and the corporate Treasurer. The Vice President and General Manager for the Georgia area also has his office in Atlanta. The company also has Vice Presidents-General Managers in charge of its operations in each of the nine states in which it operates, and those individuals have their offices in the respective states of their responsibility. So all of the persons holding executive positions with the company with the exception of the managers for the eight states other than Georgia have their offices and perform their duties in the City of Atlanta and are citizens of the State of Georgia. Further, the following departments of the company each have their headquarters in Atlanta, Georgia: accounting, personnel, public relations, marketing, revenue,

1. The distribution in the nine states is as follows: Alabama, 791,794; Florida, 1,500,523; Georgia, 1,154,604; Kentucky, 573,836; Louisiana, 1,066,702; Mississippi, 467,663; North Carolina, 716,229; South Carolina, 464,145; and Tennessee, 1,034,319.

legal, and the departments under the supervision of the corporate Secretary and the corporate Treasurer. The general tax accountant, the general accountant, the chief statistician, and all persons on their staffs, have their offices in Atlanta. The Personnel Supervisor and the Employees Benefit Committee, with all persons on their staffs, have their headquarters in Atlanta. The entire staff of the Employee Information Division, the Public Information Division, the Public Relations Division, the General Advertising Division, and those responsible for the publication of the company magazine. "Southern Telephone News", have their offices in Atlanta and the publication last mentioned is published there. All employees having to do with revenue requirements and marketing activities perform their functions in Atlanta. All of the general company attorneys, including the General Solicitor and his staff, have their offices in Atlanta. The staffs under the corporate Secretary and the corporate Treasurer, the Tax Commissioner and Tax Supervisor have their offices in Atlanta.

All of the executive officers of the company above mentioned who have their offices in Atlanta, with their various assistants and members of their staffs and other staff personnel total in the aggregate approximately 1,000 persons (1,047 by actual count on July 31, 1962), and their duties, responsibilities and functions are carried out in the general headquarters office of the company in Atlanta.

The manner in which the multi-state operations of the company are directed is as follows:

The Vice Presidents in charge of Operations and their staffs in the general office of the company in Atlanta, Georgia, exercise the authority over and are responsible for the Operations Department of the company in all of the nine states in which it operates. Included in such authority and responsibility are additions to and retirement of the company's plant, broadly termed the "construction program", which require estimates of cost of work to be done, and each such estimate involving more than $25,000.00 for either gross expenditures or plant retired by the company are required to be approved by the Engineering Staff Operations Manager and a Vice President in charge of Operations in the General Headquarters office of the company in Atlanta. The purchase of real estate for use in the company's operations where the purchase price exceeds $12,000.00 and all sales of real estate of the company require the approval of the Atlanta office. All deeds conveying title to real estate are required to be executed by the Vice President in charge of Operations in Atlanta. Leases of real estate for company use (except for short term and small consideration) are required to be approved and executed in Atlanta.

All general contracts or agreements with the federal government for communications facilities and services such as general contracts with the Army, Navy and Air Force are required to be executed by one of the Atlanta Vice Presidents in charge of Operations. Agreements with other companies for the performance of various services or the furnishing of various supplies and materials and agreements with architects and other professional people are required to be executed in the Atlanta office. Applications to the Federal Communications Commission pertaining to rate and tariff matters and other applications pertaining to radio station construction permits, radio station licenses and certificates to acquire operating exchange properties are required to be executed by the appropriate corporate officials in the General Headquarters Office in Atlanta.

General and individual railroad crossing agreements, encroachment agreements, contracts with other telephone systems, contracts with agencies to solicit and sell advertising in directories, contracts with publishing firms covering the printing of directories and contracts with agencies covering the delivery of directories, are all required to be executed by

the appropriate officials in the Atlanta office.

If a new operations district or division within any state area of the company is to be established, such requires the concurrence and approval of a Vice President in charge of Operations in the Atlanta office, and promotions to and the filling of vacancies of all high level positions within any state area of the company require the concurrence and approval of a Vice President in charge of Operations in the Atlanta Office. An Atlanta Vice President in charge of Operations, along with his staff, approves all new services to be offered by the company and the selection of the areas in which the services are to be offered and the General Rate Engineer in Atlanta fixes the tariffs for such offerings and furnishes these tariffs to the various State Area Managers.

Vice Presidents in charge of Operations and their staffs in Atlanta are responsible for and exercise the control necessary for a uniformity of methods of operations and procedures so as to utilize the facilities and equipment of the company to capacity in order to reduce operating costs and generally provide the communication service required. Reports, data and operating results from all areas of the company are reviewed, analyzed and evaluated by the Staff in Atlanta who make specific recommmendations for improvements of methods of operations and procedures.

The overall authority and responsibility for all matters relating to the company's accounts and practices and procedures relating thereto are under the supervision of the Accounting Department to prepare various reports, returns, statistical analyses, corporate records and executive instructions. All reports relative to finances, disbursements, costs, corporate records and other reports in connection with the operations of the company as a whole are prepared and kept in, and information related thereto, disseminated from the General Headquarters Office in Atlanta. All reports required to be filed by the company with the Federal Communications Commission, annual and monthly, are prepared by and under the supervision of the Accounting Department in the General Office in Atlanta.

The corporate federal income tax returns, the federal excise tax returns on telephone services, employee returns for withholding tax and Social Security tax, the federal unemployment tax returns, federal highway use tax returns, and state tax returns based on net income of the company, are all prepared in the office of the General Tax Accountant in Atlanta. Certain state tax returns which are required to be filed in the respective states are prepared in the various state area offices, but all are required to be sent to the general Office in Atlanta for audit and payment.

All registration statements required to be filed with the Securities and Exchange Commission in connection with the sale to the public of debentures of the company are prepared by the Accounting, Treasury and Legal Departments in the General Office in Atlanta. In the last twenty-two years the company has filed such registration statements in connection with thirteen issues of debentures of the company totalling in the aggregate the principal amount of approximately $750,-000,000.00. Matters having to do with the sale of these debentures are also handled in the General Headquarters Office in Atlanta.

All matters having to do with personnel of the company are handled in Atlanta. This includes authority and responsibility for negotiating the working agreement with the Union (Communications Workers of America) which represents all bargained-for employees of all departments in all state areas in which the company operates. The actual negotiation of the agreement with the Union takes place in Atlanta, and all interpretations of the working agreement, all grievance procedure provided by the working agreement, and all arbitration proceedings authorized thereby, are handled in the General Headquarters Office in Atlanta.

All advertising programs, news releases, public booklets, motion pictures, public talk and lecture demonstrations and promotions of use of the Yellow Pages in the telephone directories are prepared in Atlanta, and the annual report of the company is produced in Atlanta and distributed out of Atlanta. Research which is conducted in the public relations field, including attitude surveys and analyses, are controlled in Atlanta under the Public Relations Department. All activities relating to the marketing of any service offerings and equipment are carried on in Atlanta and the company maintains a "Communications Center" in Atlanta where all the new service offerings and equipment are put on public display and demonstrated.

All legal matters of a general nature having to do with the company are handled in Atlanta. These include corporate matters, counseling with and coordinating work of the attorneys for the company who may be assigned to state areas, review of matters relating to franchises, taxes, regulations, and other matters of a similar nature, supervision of general litigation, matters involving employer-employee relations, matters relating to regulation by state commissions, and matters before the Federal Communications Commission, or other federal agencies.

All of the company's corporate records, books, documents and papers, are kept in vaults in the General Offices in Atlanta. Practically all of the policies of insurance carried for and in behalf of the company are negotiated in Atlanta, and all deeds to real estate, title policies, leases, contracts, and agreements, and indentures of every nature, are required to be kept in the Atlanta Office.

The Board of Directors of the company, consisting of 15 members, has regular monthly meetings in the General Offices of the company in Atlanta where the usual management functions vested in the Board are exercised.

All ad valorem tax returns required to be filed in the various states, counties and municipalities and other tax jurisdictions in the nine-state area, are prepared in the Atlanta office, and the responsibility for coordinating the various activities incident to securing municipal franchises by the company in all state areas is under the supervision of the Treasurer's office in Atlanta and all records pertaining to such franchises are kept and maintained in the Atlanta office.

■ From the facts above stated the "principal place of business" of Southern Bell Telephone and Telegraph Company must be determined. The statute itself offers no guide as to the methodology which should be adopted in seeking a determination of what and where the principal place of business is. The question is one of fact and prior cases are, therefore, of limited assistance. We are aware of only one case in the Fifth Circuit involving an interpretation of the 1958 amendment (Canton, et al. v. Angelina Casualty Co., 5 Cir., 279 F.2d 553) and there the facts were so dissimilar as to be of no help here. A review of the cases decided in the other Circuits reveals a division as to the standard to be applied in making this determination. Some of the cases are decided on the "nerve center theory". Others search for the "center of corporate activity". The Senate Report accompanying the 1958 amendment indicates that the meaning of "principal place of business" is to be found in the precedents interpreting the same phrase in Sec. 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(1). Senate Report No. 1830, 85th Congress, 2nd Session (1958), U.S. Code Congressional & Administrative News, p. 3102. Here again the cases reveal a wide diversity of views as related to varied factual situations.

■ In this case, as in any case raising this question, we feel that it is our duty to view the defendant's operations as a totality. We should not consider only the place where the principal offices are located. Neither should we consider only the distribution of telephone lines

and employees on a percentage basis. We should consider all those things, but when a corporation conducts far-flung operations in a number of states the location of the executive offices takes on considerably more importance than would be the case otherwise. Measured by all of these considerations the court feels that the weight of the evidence clearly tips the evidentiary scales in favor of Georgia as the principal place of business of Southern Bell Telephone and Telegraph Company, and we, therefore, conclude that the diversity requisite to jurisdiction in this case is absent. To hold otherwise would in our opinion be in clear conflict with the intent of the Congress in adopting the 1958 amendment. Sabo v. Standard Oil Company of Indiana, 295 F.2d 893, 7 Cir. (1961); Kelly v. United States Steel Corporation, 284 F.2d 850, 3 Cir. (1960); Scot Typewriter Co., Inc. v. Underwood Corp., 170 F.Supp. 862, D.C.S.D., N.Y. (1959); Riley v. Gulf, Mobile & Ohio Railroad Company, 173 F. Supp. 416, D.C.S.D., Ill. (1959); Gilardi v. Atchison, Topeka and Santa Fe Railway Company, 189 F.Supp. 82, D.C.N.D., Ill. (1960); Moesser v. Crucible Steel Company of America, 173 F.Supp. 953, D.C.W.D., Pa. (1959).

█ It has been pointed out to the court that if the plaintiff in this case is barred from proceeding with this action he may be barred by the Georgia statute of limitations from proceeding with an action in the appropriate state court, and if that be the end result of this decision we regret that we must be its instrument. We must not, however, forget the admonition given by the Supreme Court in its early years, that "Motives of commiseration, from whatever source they flow, must not mingle in the administration of justice." Penhallow v. Doane's Adm'r, 3 Dall. 53, 88, 1 L.Ed. 507, 521.

Defendant's motion to dismiss is sustained, and counsel for the defendant will submit an appropriate order of dismissal.