### DeKALB COUNTY, GEORGIA
### v.
### SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.
### Civ. A. No. 16776.

United States District Court,
N. D. Georgia,
Atlanta Division.
Oct. 30, 1972.

George P. Dillard, Decatur, Ga., for plaintiff.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

## ORDER

HENDERSON, District Judge.

In this action of the plaintiff, DeKalb County, Georgia (sometimes hereinafter referred to as the "County"), against the Southern Bell Telephone and Telegraph Company (hereinafter referred to as "Southern Bell"), the defendant filed a motion to dismiss and a motion to strike and disallow an amendment to the plaintiff's complaint.

This suit stems from earlier legal action initiated by Southern Bell against the County, seeking to enjoin an ordinance adopted by the County requiring payment of fees and charges by the defendant, Southern Bell, and other public utilities, doing business in the unincorporated areas of DeKalb County, Georgia and using the rights-of-way of the county.[1] In the case of Southern Bell, the fees are based upon the number of telephones in service in the unincorporated areas of the County. (In the County's answer and counterclaim in the state action, it sought past rentals for five previous years at a rate of $400,000.00 per year.) By order of August 3, 1971, the Honorable H. O. Hubert, Jr., Judge, Superior Courts, Stone Mountain Judicial Circuit, issued an interlocutory injunction, restraining the County from enforcing the provisions of the ordinance. Judge Hubert declared the provisions of the ordinance void as being inconsistent with, and contradicted by, a local constitutional amendment authorizing legislation enabling the County Board of Commissioners to regulate and license certain businesses in the unincorporated areas of the County. Subsequently, the County appealed this decision to the Supreme Court of Georgia, which affirmed the trial court's holding. DeKalb County, Georgia, et al. v. Southern Bell Telephone and Telegraph Company, 228 Ga. 512, 514, 186 S.E.2d 732, 735 (1972). The court stated that:

[t]he County of DeKalb has no constitutional or statutory authority to impose the taxes and charges contained in the ordinance under attack in these cases, either as a tax or as a "rental" of its streets and rights of way and the trial court did not err in holding the ordinance void, and granting interlocutory injunction against its enforcement.

The County now brings suit against Southern Bell in this court to recover monies from rental of the rights-of-way in the unincorporated areas of the county as provided by the ordinance declared unconstitutional by the Georgia Supreme Court, DeKalb County, et al, supra.

The present petition, as amended, is in four counts, each alleging the purported basis for jurisdiction in this court. The County, in Count One, contends that under the February 9, 1972, ordinance, as adopted by the Board of Commissioners of the County, the defendant owes the County $800,000.00 for the use of county rights-of-way in unincorporated areas during the years of 1970 and 1971. (The ordinance provides that a fee of $400,000.00 per year will

[1]. Southern Bell Telephone and Telegraph Company v. DeKalb County, Georgia, et al, No. 60,129, DeKalb Superior Court.

be assessed telephone companies having over 200,000 telephones in use in the unincorporated areas of the County.) Jurisdiction for this court is alleged to be diversity of citizenship.

The second count of the complaint, which is also based upon diversity of citizenship, alleges that the defendant uses the County's rights-of-way and is therefore required to pay the county rental thereon in the form of a reasonable sum on a quantum meruit basis. The plaintiff contends that a reasonable rental for the past four years is the sum of $400,000.00 per year or a total of $1,600,-000.00 with reasonable attorney's fees and all court costs.

Count Three of plaintiff's complaint alleges jurisdiction under 28 U.S.C. § 1343(3); 42 U.S.C. §§ 1981, 1983 and 1988; and pendent jurisdiction. This count is brought as a class action on behalf of the plaintiff and its residents who are telephone users in the unincorporated areas of the County. The plaintiff and its class, it claims is being unconstitutionally discriminated against because they are being charged the same telephone rates as those county residents who are located within the municipalities of the County. These municipalities allegedly require the defendant to pay rental for rights-of-way use within their boundaries. According to the plaintiff, this is a discriminatory application of the Georgia Public Service Commission Act (Ga.Laws 1956, pp. 104 et seq.; Ga.Code Ann. § 93–701 et seq.) by the Public Service Commission, which approves all rates and services of utilities, and the defendant because there is no adjustment in the rates for these franchise taxes and fees paid to the municipalities but not paid to the County, and, therefore, violates the Fourteenth Amendment's equal protection and due process clauses. As a result of this practice, those County residents living in unincorporated areas are being disproportionately taxed since the County must rely upon tax revenues for the acquisition and maintenance of its road rights-of-way whereas the municipalities do not have to provide such funds from tax revenue. The plaintiff asks for a judgment against the defendant in the sum of $1,600,000.00 or, in the alternative, that the court grant injunctive relief against collection, by the defendant, of its rates and charges as established and approved by the Georgia Public Service Commission for the unincorporated areas of the County, until such rates are adjusted to a proper level.

The fourth and final count of the plaintiff's complaint is based on diversity jurisdiction and seeks a declaration of the plaintiff's rights to impose rents and charges for the use of its road rights-of-way and injunctive relief to prohibit the defendant from refusing to provide telephone services in those unincorporated areas of the County where the plaintiff is attempting to collect rights-of-way rental.

In essence, the defendant's motion to dismiss is founded on two premises: (1) that none of the plaintiff's four counts are based upon proper jurisdiction to enable this court to entertain this case; and (2) that the plaintiff's right of recovery under the County's ordinance has been decided by the Georgia Supreme Court in the case of DeKalb County, Georgia et al. v. Southern Bell Telephone and Telegraph Co., *supra,* which ruled the ordinance unconstitutional. Subsequently, the plaintiff filed a proposed amendment to its complaint. The defendant moved to strike and disallow the amendment and to dismiss the complaint in its entirety if the amendment is allowed. The defendant's motion to strike is based on the ground that the amendment adds nothing to the original suit's substance and it does not supply the deficiencies present in the original complaint.

The motions will be considered in the order of their filing, taking first the defendant's motion to dismiss the complaint.

■ It is unnecessary here to consider the question of jurisdiction of plaintiff's Counts One, Two and Four. It

has been long held that the federal courts follow state decisions in determining whether a state statute or municipal ordinance violates the state constitution. Post v. Supervisors, 105 U.S. 667, 26 L.Ed. 1204 (1881) (issue of municipal bonds); Gen. Amer. Tank Car Corp. v. Day, 270 U.S. 367, 46 S.Ct. 234, 70 L.Ed. 635 (1926) (state tax); Memphis & C. Ry. Co. v. Pace, 282 U.S. 241, 51 S.Ct. 108, 75 L.Ed. 315 (1931) (road maintenance local tax); Glenn v. Field Packing Co., 290 U.S. 177, 54 S.Ct. 138, 78 L.Ed. 252 (1933) (state tax); Highland Farms Dairy, Inc. v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1937) (milk price control); Mestre v. City of Atlanta, 255 F.2d 401 (5th Cir. 1958) (municipal zoning ordinance); Carolina-Virginia Racing Ass'n v. Cahoon, 214 F.2d 830 (4th Cir. 1954) (state anti-gambling statute). This general proposition was codified by the Congress in 1948 as 28 U.S.C. § 1652, Rules of the Decision Act.

■ The plaintiff alleges it is raising issues here which are additional to those raised in the state trial court. However, Counts One, Two and Four of the plaintiff's complaint, as is its cross claim in the state court action, are based directly upon the County's ordinance pertaining to rights-of-way rental in unincorporated areas which was held unconstitutional by the Georgia Supreme Court. It appears the plaintiff is seeking a review of this Georgia Supreme Court decision and this court is without the authority to entertain such a question, 28 U.S.C. § 1331 et seq.

■■ If, in fact, the County's ordinance was enforceable, there would still be no jurisdiction in this court because there is no diversity of citizenship as alleged. The authority for federal district court jurisdiction, 28 U.S.C. § 1332(c), provides that a corporation "shall be deemed a citizen of any State by which it has been incorporated and *of the State where it has its principal place of business*" (emphasis added). The determination of corporate citizenship (the principal place of business) is a factual question requiring a review of the corporation's total activities, Briggs v. American Flyers Airline Corp., 262 F. Supp. 16 (D.C.Okl.1966); Herschel v. Eastern Airlines, Inc., 216 F.Supp. 347 (D.C.N.Y.1963); Anderson v. Southern Bell Tel. and Tel. Co., 209 F.Supp. 921 (M.D.Ga.1962); to be decided on a case by case basis. *e.g.*, Mahoney v. Northwestern Bell Tel. Co., 258 F.Supp. 500 (D.C.Neb.1966), aff'd 377 F.2d 549 (8th Cir. 1967); see also Herschel v. Eastern Airlines, Inc., *supra*; Scot Typewriter Co. v. Underwood Corp., 170 F.Supp. 862 (S.D.N.Y.1959). See generally, 1 J. Moore, Federal Practice, 2d ed. ¶ 0.77 [3.–1]–0.77 [3.–4] pp. 717.60–717.82.

The plaintiff asserts merely that Southern Bell's principal place of business is New York, and not Georgia, because all policies are made in New York; New York is the corporate nerve center and is the center of its business activity. Such inexactitudes are not persuasive in light of the evidence offered by the defendant of its principal place of business.

The defendant is a New York corporation, all of its common stock being owned by American Telephone and Telegraph Company (hereinafter referred to as "American") also, a New York corporation. Southern Bell is engaged in furnishing communications services in a four state area, namely, Florida, Georgia, North Carolina and South Carolina. Its office is separate and distinct from that of American's. There are no directors of the defendant who are also directors of American and the defendant's directors meet at different times and places than do American's directors. Southern Bell's general office is located in Atlanta, Georgia and most of the company's executive officers and their staffs are located in the Atlanta office. These officers include a president; vice presidents in charge of operations, comptroller activities, revenue requirements, marketing, personnel, public rela-

tions, legal matters; a corporate secretary; and a corporate treasurer. The vice presidents in charge of operations in the four states have offices within those states. Furthermore, all internal employee matters appear to be directed and operated from Atlanta where there are the offices of Personnel Supervisor, Employee's Benefit Committee and the like. The property of the company is maintained separately from that of American. There appears to be no mutual use of property except by transfer, lease or agreement and for value received. All books and records of the companies are kept separately. Southern Bell pays for any advice and services provided by American. The operating procedures of Southern Bell are not governed by or controlled by American; the company has complete control of its own affairs and operations which are directed from Southern Bell's offices in Atlanta, Georgia. In the same vein, the matter of to whom and upon what conditions the company offers services to the public is within the sole discretion of the company and is in no way controlled by American. The company operates its business independently from American and is not an alter ego or an instrumentality of American.

In short, the factual situation surrounding the company's principal place of business is much the same as found in Anderson v. Southern Bell Tel. & Tel. Co., *supra*. Although not binding precedent, the case is helpful for the sake of comparison since there appears to be no Fifth Circuit Court of Appeals decision with facts closely related thereto interpretating the 1958 amendment to 28 U.S.C. § 1332. The only case found is so dissimilar it offers no assistance whatsoever here. Canton et al. v. Angelina Casualty Co., 279 F.2d 553 (5th Cir. 1960). The existence or non-existence of diversity of citizenship must rest clearly upon the facts in each case.

The writers and the various circuits have developed many tests for determining the principal place of business, namely the "home office or nerve center theory", "the place of operations theory" and variations of these basic tests such as "the top management test" and "the day to day operations test". See generally, S.Rep.No.1830, 85th Cong.2d Sess. (1958); 1 J. Moore, Federal Practice, supra; U.S.Code Congressional & Admin.News, 1958, p. 3102; Comment, 47 Iowa L.Rev. 1151 (1962); Comment, 58 Col.L.Rev. 1287 (1958).

Here, the defendant's operation must be viewed in its totality, and in light of all the evidence before the court, it is obvious that Georgia is the principal place of business of Southern Bell regardless of the test applied to the facts. To find otherwise would conflict with the Congressional intent behind the 1958 amendment to 28 U.S.C. § 1332. Therefore, the defendant, being a citizen of Georgia, cannot be sued by a Georgia party plaintiff under 28 U.S.C. § 1332(c). Accordingly, this court is without jurisdiction to consider Counts One, Two and Four of the plaintiff's complaint, and the defendant's motion to dismiss those counts is sustained.

■ As stated, Count Three of the complaint charges discrimination in rate charges for services in the unincorporated areas of DeKalb County and seeks money damages and injunctive relief against the collection of the defendant's rates in those areas. Again, the plaintiff's claim must be rejected. Congress has seriously curtailed federal jurisdiction in the area of state rate-making policy. See 1-A J. Moore, Federal Practice, ¶¶ 0.206, 0.207, pp. 2281–2286. The Johnson Act of 1934, 28 U.S.C. § 1342, limits normal rate litigation to the state courts in order to leave federal courts free to use their equity powers for relief against arbitrary action. *e.g.*, City of Meridian, Miss. v. Mississippi Valley Gas Co., 214 F.2d 525 (5th Cir. 1954). The Act provides that:

> [t]he district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affect-

ing rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

It is the general view that this Act requires all four conditions to be present before the Act can apply and thereby limit the court's jurisdiction. United States v. Public Utilities Comm. of Cal., 141 F.Supp. 168, 183 (N.D.Cal.1956); aff'd, 355 U.S. 534, 78 S.Ct. 446, 2 L. Ed.2d 470 (1958). From the plaintiff's complaint, it is clear that jurisdiction is based upon the alleged fact that the rates of the defendant, as passed by the Georgia Public Service Commission and applied to the plaintiff, are violative of the Constitution. The complaint alleges jurisdiction under 28 U.S.C. § 1343(3); 42 U.S.C. §§ 1981, 1983 and 1988; and pendent jurisdiction. All of these code sections require the presence of an act or action which is repugnant to the Federal Constitution before federal court jurisdiction will lie. Also, in order to invoke pendent jurisdiction there must be some federal jurisdiction over at least one claim in the case. Such would not be true here if the Johnson Act otherwise precludes jurisdiction of the alleged constitutional claims. See, United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1934).

■ It appears further that the other necessary conditions of the Johnson Act are present to exclude jurisdiction.

The rate involved here clearly is an intrastate matter. The affidavit of the Vice President for Georgia of Southern Bell Telephone and Telegraph Company indicates that this rate order of the Public Service Commission was granted after reasonable notice and hearing. These allegations are not refuted by the plaintiff and must be considered as true. Therefore, conditions (2) and (3) of the Johnson Act of 1937 are present. Finally, assuming the first three conditions to be present, the Act prohibits federal jurisdiction when there is a remedy available in the state courts. The plaintiff has made no effort to seek relief through the Public Service Commission. Rule 15 of the Georgia Public Service Commission provides for a procedure whereby a rate order may be challenged and no such attempt has been made by the plaintiff for reconsideration. In viewing a similar situation, the Georgia Supreme Court stated in Ga. Pub. Serv. Comm. v. Gen. Tel. Co. of Ga., 227 Ga. 727, 728, 182 S.E.2d 793, 794 (1971) that:

[e]quity courts refuse jurisdiction where an adequate administrative remedy is available and has not been exhausted. The Georgia Public Service Commission was created for a special purpose with special . . . matters including the establishment of rates for public utilities. The courts presuppose it will provide a proper adjudication of such matters . . . . [After] administrative remedies are exhausted . . . a court of equity will take jurisdiction to determine . . . [a constitutional question such as confiscation].

Thus, the plaintiff's remedy is first with the Georgia Public Service Commission and, after administrative remedies are exhausted, in the state courts. This course has not been attempted by the County even though a remedy appears to be available. The procedure for administrative relief and the Georgia

Supreme Court's requirement that it be exhausted is based on the premise that making and controlling utility rates is a legislative function delegated to a quasi-legislative body and the Georgia courts have no power to control and make such rates. Ga.Code Ann. § 93–304 et seq. See, So. Bell T. & T. Co. v. Georgia Pub. Serv. Comm., 203 Ga. 832, 869–870, 49 S.E.2d 38 (1948). The plaintiff here has pursued neither avenue of state relief which, according to the Johnson Act, is essential.

For the foregoing reasons, it is clear this court does not have jurisdiction over Count Three of the complaint.

The plaintiff argues, in its brief in opposition to defendant's motion to dismiss, that the Johnson Act of 1937, 28 U.S.C. § 1342, is not applicable to the present case because this is not an action to enjoin, suspend, or restrain a rate order. However, the plaintiff is seeking to enjoin the defendant from levying those rates approved by the Commission until the rates are reduced in the unincorporated areas of DeKalb County or payment of rental for the rights-of-way in the County. By seeking to enjoin the collection of the fees, the County is seeking to have the rate order of the Commission suspended without an appeal to that body as required by the Georgia law, see, Ga. Pub. Serv. Comm. v. Gen. Tel. Co. of Georgia, *supra*; or to the Georgia courts. This situation appears to present the exact type problem which the Congress sought to remedy in passing the Johnson Act in 1937.

Therefore, the motion of Southern Bell to dismiss the complaint of the County is hereby sustained and granted.

The proposed amendment to the plaintiff's petition does not substantially add to or change the cause of action and consequently the motion of the plaintiff to amend its complaint is hereby denied and the defendant's motion to strike and disallow the amendment is hereby granted.