[828 NE2d 964, 796 NYS2d 7]

NEW YORK TELEPHONE COMPANY, Respondent, v SUPERVISOR OF TOWN OF OYSTER BAY et al., Appellants, et al., Defendant. (And a Third-Party Action.) (Action No. 1.)

NEW YORK TELEPHONE COMPANY, Respondent, v SUPERVISOR OF TOWN OF OYSTER BAY et al., Appellants, et al., Defendant. (And a Third-Party Action.) (Action No. 2.)

Argued February 10, 2005; decided March 31, 2005

**POINTS OF COUNSEL**

*Anthony J. LaMarca, P.C.,* Mineola (*Anthony J. LaMarca* of counsel), and *Murphy, Bartol & O'Brien, LLP (Diane K. Mendez* of counsel), for appellants. I. The statutory definition of a special ad valorem levy was given a novel and unnecessary interpretation by the courts below. (*New York Tel. Co. v State of New York,* 169 App Div 310, 218 NY 738; *Matter of New York Tel. Co.,* 257 App Div 415, 282 NY 667; *Sysco Corp. v Town of Hempstead,* 133 AD2d 751; *O'Flynn v Village of E. Rochester,* 292 NY 156; *Matter of New York Tel. Co. v Common Council of City of Rye,* 43 Misc 2d 668, 25 AD2d 682; *Applebaum v Town of Oyster Bay,* 81 NY2d 733; *Long Is. Light. Co. v Office of Supervisor of Town of N. Hempstead,* 233 AD2d 300; *Matter of Sperry Rand Corp. v Town of N. Hempstead,* 53 Misc 2d 970; *Landmark Colony at Oyster Bay Homeowners' Assn. v Town of Oyster Bay,* 145 AD2d 542.) II. The rationale of the Appellate Division decision imperils other special ad valorem levies and unnecessarily jeopardizes a traditional method of financing the costs of local government. (*New York Tel. Co. v State of New York,* 169 App Div 310, 218 NY 738; *Matter of New York Tel. Co. v Common Council of City of Rye,* 43 Misc 2d 668, 25 AD2d 682.)

*Cullen and Dykman Bleakley Platt LLP,* Brooklyn (*Peter J. Mastaglio, Karen I. Levin, Robert J. Sorge* and *Jo-Ellen P. Holbrook* of counsel), for respondent. I. The Supreme Court and Second Department correctly determined that special ad valorem levies for refuse and garbage collection services may not be imposed upon respondent's mass property because such property cannot benefit from such services. (*Long Is. Light. Co. v Office of Supervisor of Town of N. Hempstead,* 233 AD2d 300, 89 NY2d 1029; *Applebaum v Town of Oyster Bay,* 81 NY2d 733; *Sysco Corp. v Town of Hempstead,* 227 AD2d 544; *Matter of Sperry Rand Corp. v Town of N. Hempstead,* 53 Misc 2d 970, 29 AD2d 968, 23 NY2d 666; *Landmark Colony at Oyster Bay Homeowners' Assn. v Town of Oyster Bay,* 145 AD2d 542; *Barclay Townhouse at Merrick II Corp. v Town of Hempstead,* 289 AD2d 351.) II. Appellants' imposition of special ad valorem levies on respondent's mass property is unconstitutional. (*Myles Salt Co. v Board of Commrs. of Iberia & St. Mary Drainage Dist.,* 239 US 478.) III. The Supreme Court and Second Department correctly determined that an indirect or general benefit is insufficient to support the imposition of special ad valorem levies for refuse and garbage collection services. (*Applebaum v Town of Oyster Bay,* 81 NY2d 733; *O'Flynn v Village of E. Rochester,* 292 NY 156; *Matter of New York Tel. Co. v Common Council of City of Rye,* 43 Misc 2d 668, 25 AD2d 682; *Long Is. Light. Co. v Office of Supervisor of Town of N. Hempstead,* 233 AD2d 300; *Sysco Corp. v Town of Hempstead,* 133 AD2d 751; *Matter of New York Tel. Co.,* 257 App Div 415, 282 NY 667; *New York Tel. Co. v State of New York,* 169 App Div 310, 218 NY 738.) IV. The Supreme Court and Second Department correctly relied upon the *Long Island Lighting Company* decisions. (*Ryan v New York Tel. Co.,* 62 NY2d 494; *Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640; *D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659; *Matter of Halyalkar v Board of Regents of State of N.Y.,* 72 NY2d 261.) V. The Supreme Court and Second Department correctly determined that respondent commenced the appropriate action within the applicable limitation period. (*Niagara Mohawk Power Corp. v City School Dist. of City of Troy,* 59 NY2d 262; *City of Rochester v Chiarella,* 65 NY2d 92, cert denied sub nom. *Quality Packaging Supply Corp. v City of Rochester,* 464 US 828; *Kahal Bnei Emunim & Talmud Bnei Simon Israel v Town of Fallsburg,* 159 Misc 2d 1045; *Niagara Mohawk Power Corp. v City School Dist. of City of Troy,* 59 NY2d 262; *People ex rel. New York Cent. R.R. Co. v Limburg,* 283 NY 344; *Applebaum v Town of Oyster Bay,* 81 NY2d 733; *Sysco Corp.*

v Town of Hempstead, 227 AD2d 544; *Long Is. Light. Co. v Office of Supervisor of Town of N. Hempstead,* 233 AD2d 300; *Landmark Colony at Oyster Bay Homeowners' Assn. v Town of Oyster Bay,* 145 AD2d 542; *Matter of Sperry Rand Corp. v Town of N. Hempstead,* 53 Misc 2d 970, 29 AD2d 968, 23 NY2d 666.) VI. The Supreme Court and Second Department properly rejected appellants' hypothetical ramifications. (*Matter of Cohalan v Gioia,* 88 AD2d 722; *New York Tel. Co. v Nassau County,* 297 AD2d 663, 1 NY3d 485; *Manion v Pan Am. World Airways,* 55 NY2d 398; *Jandreau v La Vigne,* 170 AD2d 861; *McKesson Corp. v Division of Alcoholic Beverages & Tobacco, Dept. of Bus. Regulation of Fla.,* 496 US 18; *McIntosh v Niederhoffer, Cross & Zeckhauser,* 106 AD2d 774, 64 NY2d 608; *De Lisa v Amica Mut. Ins. Co.,* 59 AD2d 380; *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1; *Foss v City of Rochester,* 65 NY2d 247; *Matter of New York Tel. Co. v Nassau County,* 267 AD2d 629, 95 NY2d 756.)

*A. Kevin Crawford,* Albany, for Association of Towns of the State of New York, amicus curiae. I. Respondents are time-barred from contesting the determination of the Town Board of the Town of Oyster Bay that their properties are benefited by inclusion in the garbage and refuse collection districts. (*Matter of Palmer v Town of Kirkwood,* 288 AD2d 540; *Herzog v Town of Thompson,* 251 AD2d 917; *Gusdore Corp. v Michaels,* 13 Misc 2d 762, 8 AD2d 663, 9 AD2d 601, 7 NY2d 706.) II. Except as otherwise provided in sections 194 and 195 of the Town Law, neither the Town Law nor the Real Property Tax Law affords an administrative procedure to review a claim that property is not "benefited" by a special district improvement or service. III. Even in the case of a special district financed on the basis of a "special assessment," rather than a "special ad valorem levy," once property has been determined to be "benefited," an aggrieved property owner's remedy is to challenge the "amount of the benefit" to the property, not the fact that it is "benefited."

## OPINION OF THE COURT

ROSENBLATT, J.

New York Telephone Company (NYTC) owns and maintains telephone lines, wires, cables, poles, supports and enclosures for electrical conductors within the Town of Oyster Bay. The equipment, referred to as "mass property," is situated on public and private land and is within the Town's refuse and garbage

district.[1] NYTC does not, however, own any of the land on, over or under which this equipment is located. The mass properties are not amenable to human occupation, produce no garbage or refuse of any kind, and neither require nor receive garbage collection. Nevertheless, the Town subjects them to a special ad valorem levy (i.e., a levy assessed as a percentage of the value of the mass property) for garbage collection. When NYTC's equipment sits on privately owned land, the Town also imposes the levy on the private fee owner, based on the land's value.

Claiming that its mass properties received no benefit from municipal garbage collection and that the Town's levy therefore violates Real Property Tax Law § 102 (14), NYTC initiated two related actions in 1998 and 1999, seeking a judgment declaring the Town's levy on its mass properties for garbage collection illegal and enjoining the continued imposition of such levies. Further, NYTC argued that it was entitled to a refund, with interest, for the levies it paid in tax years 1995 through 1999, as well as a trial to calculate its damages for tax years 1992, 1993 and 1994.

Supreme Court granted summary judgment to NYTC, invalidating the Town's levy and enjoining future garbage collection levies against NYTC's mass properties. It also directed the Town to refund with interest any levies collected on the mass properties between tax years 1995 through 1999, and determined that the refund for tax years 1992 through 1994 would be calculated at trial. Relying on RPTL 102 (14) and *Applebaum v Town of Oyster Bay* (81 NY2d 733 [1992]), the court concluded that the Town was barred from imposing a special ad valorem levy on a property that could not be benefited by the municipal service funded by the levy. NYTC's mass properties could receive no benefit from municipal garbage collection, the court ruled, because they produced no garbage or refuse. In so finding, the court rejected the Town's contention that NYTC's mass properties were benefited as part of an "integrated whole" with other properties owned by NYTC. Finally, Supreme Court determined that, because NYTC was challenging the Town's authority to impose the levy on its mass properties, it was not obliged to exhaust its administrative remedies and commence a proceeding under CPLR article 78.

---

1. Pursuant to Town Law § 198 (9) (a), the creation of a refuse and garbage district enables a town to provide or contract for "the collection and/or resource recovery or disposition, or any combination thereof of garbage, ashes, rubbish and other waste matter in such district."

Advancing the same reasoning as Supreme Court, the Appellate Division affirmed (6 AD3d 511 [2004]) and certified the appeal to this Court. We affirm and hold that RPTL 102 (14) does not authorize the Town to impose a special ad valorem levy for garbage collection on NYTC's mass properties because they do not and cannot receive any direct benefit from that municipal service.[2]

Special ad valorem levies represent a key vehicle[3] for financing garbage collection in a refuse or garbage collection district (*see* RPTL 102 [16]).[4] As defined by RPTL 102 (14), " '[s]pecial ad valorem levy' means a charge imposed upon *benefited real property* in the same manner and at the same time as taxes for municipal purposes to defray the cost, including operation and maintenance, of a special district improvement or service, but not including any charge imposed by or on behalf of a city or village" (emphasis added).

---

**2.** The dissent argues that a property may be "benefited," and therefore be made subject to possible special ad valorem levies, if it receives an "indirect or general benefit" from the service funded by the levy (dissenting op at 396). This interpretation of "benefited" renders the word meaningless. If an indirect benefit is sufficient for the purposes of RPTL 102 (14), every conceivable species of real property could be said to benefit from garbage removal, or any other municipal service. Any given municipal service will *always* exert a positive influence on a property's value—an indirect benefit under the dissent's reasoning. The Legislature's use of the modifier "benefited" plainly implies that there is some class of property that is not benefited. The dissent's interpretation of the statute would render "not-benefited real property" a nullity, and thereby defeat the legislative intent. Further, its construction disregards the plain distinction between a special ad valorem levy and a general tax (*see* RPTL 102 [20] [no benefit requirement]).

**3.** In addition to special ad valorem levies, a town may also impose user fees to fund garbage and refuse collection. Town Law § 198 (9) (b) authorizes a town to establish "charges, fees or rates to be paid by users for refuse and garbage collection service and may provide for the payment of said charges in advance." The statute notes that "[s]uch charges, fees or rates may be based upon the volume of refuse, garbage, ashes, rubbish and other waste matter collected, making a proper allowance for commercial or industrial establishments, the number of calls per month, the number of persons or families served in the district, or upon any other equitable basis as the town board may determine."

**4.** RPTL 102 (16) explains that a "[s]pecial district" is a "town or county improvement district, district corporation or other district established for the purpose of carrying on, performing or financing one or more improvements or services intended to benefit the health, welfare, safety or convenience of the inhabitants of such district or to benefit the real property within such district." In a special district, real property is "subject to special ad valorem levies or special assessments for the purposes for which such district was established" (*id.*).

Undisputedly, NYTC's mass properties constitute "real property" under the statute. RPTL 102 (12) (d) states that "[r]eal property" includes "all telephone and telegragh lines, wires, poles, supports and inclosures for electrical conductors upon, above and underground" when "owned by a telephone company." That telephone poles, wires and the like constitute real property does not mean, however, that they fall into the category of *benefited* real properties. By limiting special ad valorem levies to "benefited" properties, the Legislature obviously contemplated that there is some class of real property that, for the purposes of section 102 (14), is not benefited.

Our decisional law establishes that, for real property to be "benefited," it must be capable of receiving the service funded by the special ad valorem levy. Thus, in *Applebaum v Town of Oyster Bay* (81 NY2d 733 [1992]), we considered the legality of Oyster Bay's imposing a special ad valorem levy for garbage collection on a property that, because of the operation of a covenant, could not receive such services from the municipality. Reasoning that Oyster Bay "does not provide and does not intend to provide the residential property owners with the benefit of garbage collection services," the Court held that the levy imposed by the Town was invalid (*id.* at 735; *see also Landmark Colony at Oyster Bay Homeowners' Assn. v Town of Oyster Bay*, 145 AD2d 542 [2d Dept 1988]; *Barclay Townhouse at Merrick II Corp. v Town of Hempstead*, 289 AD2d 351 [2d Dept 2001]).

As the Appellate Division correctly recognized, the logic of *Applebaum* dictates our result. Although here, no preexisting legal agreement bars NYTC's mass properties from receiving garbage collection from the Town, the inherent characteristics of the subject properties preclude them from receiving such services.[5] The dissent would distinguish *Applebaum* on the ground that the taxpayers in that case were required to pay both the

---

**5.** We disagree with the dissent's suggestion that our decision today "obliterates the distinction" between special assessments, which are levied in proportion to the benefit received (*see* RPTL 102 [15]), and special ad valorem levies (dissenting op at 396). Our analysis neither contemplates this result nor demands a strict proportionality review of special ad valorem levies. We note that, in extremely rare cases, a town's severe restrictions on the property owner's use of the municipal service funded by the special ad valorem levy may entitle the property owner to relief (*see Matter of Sperry Rand Corp. v Town of N. Hempstead*, 53 Misc 2d 970 [1967], *affd* 29 AD2d 968 [1968], *affd* 23 NY2d 666 [1968]). We stress, however, that a special ad valorem levy may be validly imposed on a property—in spite of municipal use restrictions—as long as the restrictions do "not reduce the benefit to the [property owner] 'to

special ad valorem levy plus the cost of private garbage collection, whereas here NYTC is responsible only for the levy, from which "it derives an indirect benefit" (dissenting op at 397). This is a distinction without a difference. Our focus is on whether a property is capable of receiving a benefit, not what special accommodations an owner must make when a property is denied the municipal service. In this critical sense, *Applebaum* and the present case are on all fours. Moreover, even under the dissent's interpretation of RPTL 102 (14), the property at issue in *Applebaum* received the same—if not greater—degree of indirect "benefit" from municipal garbage collection as NYTC's mass properties here.

In determining whether a property is benefited—i.e., whether it is capable of receiving the municipal service funded by the special ad valorem levy—we look to the innate features and legally permissible uses of the property, not the particularities of its owners or occupants or the state of the property at a fixed point in time. As a class of property, telephone poles can never produce or require municipal garbage collection. For the purposes of a special ad valorem levy to finance garbage collection, they therefore are not benefited.

By contrast, a lot that is vacant, but otherwise amenable to development, would be "benefited." Although undeveloped, there is no legal or practical disability to the lot's one day receiving garbage collection. Likewise, a hypothetical home whose owners never produced refuse or garbage of any kind would, for the purposes of RPTL 102 (14), be directly benefited by municipal garbage collection. By the same token, home or business owners could not opt out of a special ad valorem levy funding the local sewer or water district simply by virtue of having a septic tank or well on their properties. The same logic would apply to others who would seek to avoid special ad valorem levies under analogous circumstances. In determining whether a property is capable of receiving a benefit, our focus is on the innate characteristics of an individual property as representative of a species of property (in our last example, homes), not the conditions or proclivities of individual owners.[6]

---

the point where it is, in effect, nonexistent' " (*Sysco Corp. v Town of Hempstead*, 227 AD2d 544, 545 [2d Dept 1996], *lv denied* 89 NY2d 804 [1996]).

**6.** The dissent argues that our result on this appeal will engender adverse, far-reaching fiscal consequences for municipalities. Neither the Town nor the Association of Towns of the State of New York, as amicus, has advanced this

The species of real property at issue here cannot, even theoretically, produce garbage. NYTC's mass properties therefore are incapable of receiving any direct benefit from the Town's garbage and refuse district.[7] Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

CIPARICK, J. (dissenting). For essentially three reasons, I respectfully dissent and would vote to reverse.

A special ad valorem levy is defined as "a charge imposed upon *benefited* real property . . . *to defray the cost*, including operation and maintenance, of a special district improvement *or service*" (RPTL 102 [14] [emphasis added]).[1] The Town of Oyster Bay imposes a number of such ad valorem levies on plaintiff New York Telephone Company (NYTC), as owner of mass properties in the Town. Indeed, NYTC itself pays several ad valorem levies that contribute to the operation and maintenance of special districts, including a sewage collection district, sewage disposal district, public parking district, lighting district, park and drainage district, and a garbage and refuse collection district. Thus far, NYTC has elected to challenge only the ad valorem levy associated with the garbage and refuse collection district within a specific geographic area.

First, the narrow interpretation that both the majority and the lower courts give to the term "benefited" is unwarranted. These levies finance varying services associated with the operation and maintenance of "special districts" (RPTL 102 [16]). These special districts are established expressly to "benefit the

claim in any but the most perfunctory manner, and for good reason. Our decision today does nothing to upset the present, "traditional method of financing costs of local government" (dissenting op at 398), and it should not be so construed. As both a conceptual and statutory matter, special ad valorem levies are utterly distinct from general property taxes. Our analysis focuses exclusively on the meaning of the word "benefited" in RPTL 102 (14), which concerns only the special ad valorem levy. We are unwilling to embrace a strained construction of the Legislature's plain language solely on the basis of the Town's unsubstantiated or exaggerated claims. If, in the wake of *Applebaum*, the Town has been relying on an ultra vires revenue collection practice, and has continued to do so after Supreme Court and the Appellate Division correctly interpreted the statute and disapproved the practice, any claimed hardship is self-created.

7. We note that NYTC's challenge here constitutes a plenary action attacking the Town's authority to impose special ad valorem levies for garbage and refuse collection on the subject mass properties, and it is therefore not time-barred under Town Law § 195 (2) (*see Niagara Mohawk Power Corp. v City School Dist. of City of Troy*, 59 NY2d 262, 269 [1983]).

1. Black's defines an ad valorem tax as "[a] tax imposed proportionally on the value of something (esp. real property), rather than on its quantity or some other measure" (Black's Law Dictionary 1496 [8th ed 2004]).

health, welfare, safety or convenience of the inhabitants of such district or to benefit the real property within such district" (RPTL 102 [16]; *see also* Town Law § 202 [3]). The mass properties owned by plaintiff are real property as defined by RPTL 102 (12) (d) and subject, like all other real property within the special district, to special ad valorem levies.

While telephone poles may not produce or require municipal garbage collection, the Legislature did not indicate that a direct or actual benefit was necessary to trigger this type of levy. Instead, in its definition, it required only that the property at issue be "benefited" (RPTL 102 [14]). Moreover, the validity of a tax does not "depend on the receipt of some special benefit" (*O'Flynn v Village of E. Rochester*, 292 NY 156, 165 [1944]; *see also Memphis & Charleston Ry. v Pace*, 282 US 241, 246 [1931]), and an ad valorem tax "is payable regardless of whether the property is used or not" (*Ampco Print.-Advertisers' Offset Corp. v City of New York*, 14 NY2d 11, 22 [1964]).

A reading of RPTL 102 (14), in conjunction with other relevant sections of both the Real Property Tax Law and the Town Law, makes clear that an ad valorem levy, by definition, requires only an indirect or general benefit to the subject property. The mass properties at issue here are clearly benefited within the meaning of RPTL 102 (14). An ad valorem levy cannot be based on the commensurate value of services; instead, it is by definition a levy based on the value of the property itself (*see* RPTL 102 [14]).

By contrast, a "[s]pecial assessment" is levied in "proportion to the benefit received" (RPTL 102 [15]). This language makes clear that there must be a direct benefit supporting a special assessment. Real Property Tax Law § 102 (14), however, does not include an analogous qualification in its definition of an ad valorem levy and the majority obliterates the distinction between the two.

The majority, in requiring the subject property to receive a "direct benefit from the Town's garbage and refuse district," unnecessarily and unjustifiably restricts the availability of, and a town's ability to impose, an ad valorem levy on real property located within a special district (majority op at 395). Moreover, the majority's restrictive reading of this distinct tax provision undermines the Town's ability to operate and maintain necessary special districts. The subject mass properties at issue here, even if not producing trash or refuse, nevertheless are part of

the geographically designated special district that requires this relevant and necessary service. Therefore, the telephone poles, wires, cables, lines, supports and enclosures that constitute NY-TC's mass property are part of the special district, duly constituted by the Town Board pursuant to Town Law § 194.[2] As such, it is clear that this property derives a benefit from the Town's general maintenance and operation of the district. For example, at a minimum, the Town's removal of trash from the district preserves the value and viability of real property within the district. Clearly, a well maintained and trash-free district benefits NYTC's mass properties.

Second, today's decision is a significant step beyond *Applebaum v Town of Oyster Bay* (81 NY2d 733 [1992]). There, a covenant prohibited plaintiff owners from receiving any garbage collection services from the Town, yet the Town imposed a special ad valorem levy for garbage collection—thus requiring plaintiffs to pay twice for essential garbage collection services. Here, NYTC is only responsible for the ad valorem levy for a garbage and refuse collection district from which it derives an indirect benefit. This indirect benefit is sufficient to support the imposition of the levy.

Third, the majority looks exclusively to the nature or inherent characteristics of the subject property to determine whether any direct benefit is evident. It is inconsequential, however, that the "species of real property at issue here cannot, even theoretically, produce garbage" (majority op at 395).[3] The majority attempts to limit its holding to the subject garbage collection district but fails to distinguish how its logic applies exclusively to garbage collection districts, and not to the numerous other districts that depend on ad valorem levies for their maintenance.

The property is likewise incapable of producing sewage, yet NYTC pays an ad valorem levy in support of the sewage district.

---

2. Requiring only an indirect benefit does not, as the majority suggests, render the term "benefited" meaningless (majority op at 392 n 2). To the contrary, the term is used consistently with Town Law § 194 (1) (b) which requires a finding of "benefited" property prior to establishment of the district itself. The term is used to ensure that only real property within a special district will be subject to the Town's special ad valorem levy. Therefore, contrary to the majority's assertion, the term is not superfluous and does not cover "every conceivable species of real property" (majority op at 392 n 2). Only real property that exists within the geographically designated special district is benefited within the meaning of RPTL 102 (14).

3. There may come a time when the property itself is abandoned and becomes refuse.

Similarly, telephone poles and wires, for example, have no need for a public park, yet NYTC pays a distinct levy in support of this special district. The mass properties will never directly benefit from the availability of public parking in the district, or from an efficient drainage system, yet NYTC, at least thus far, willingly pays an ad valorem levy for each of these services.

In short, the majority's reasoning invalidating this ad valorem levy, and requiring a "direct benefit" to the subject real property, has potentially far-reaching consequences, as the majority's rule jeopardizes a traditional method of financing costs of local government.

Judges G.B. SMITH, READ and R.S. SMITH concur with Judge ROSENBLATT; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Chief Judge KAYE and Judge GRAFFEO concur.

Order affirmed, etc.