■ In the Matter of NIAGARA MOHAWK POWER CORPORATION, Appellant, v TOWN OF TONAWANDA ASSESSOR et al., Respondents. [796 NYS2d 202]—

Appeal from a judgment (denominated order) of the Supreme Court, Erie County (Joseph R. Glownia, J.), entered November 25, 2003 in a proceeding pursuant to CPLR article 78. The judgment granted respondents' motion to dismiss the petition and amended petition and denied petitioner's cross motion.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: By this proceeding under CPLR article 78, petitioner challenges a determination by respondents that certain of petitioner's real properties—which consist of narrow corridors of land improved only by electric and natural gas transmission and distribution lines and pipes and which allegedly generate no solid refuse—are benefitted by the services provided by a special garbage or refuse district of respondent Town of Tonawanda (Town) and therefore are properly included in the Town's most recent and final assessment rolls pertaining to that district. Petitioner appeals from a judgment dismissing the petition and amended petition on the ground that the properties in question are in fact "benefitted propert[ies]" and thus are "properly subject to" special ad valorem levies for garbage collection.

We agree with Supreme Court that the properties are benefitted and thus subject to the imposition of special garbage district ad valorem taxes. The test for determining whether real properties are benefitted, thus warranting special district assessment, is whether the properties are "capable of receiving the service funded by the special ad valorem levy" (*New York Tel. Co. v Supervisor of Town of Oyster Bay* (4 NY3d 393 [2005]). The benefit can be potential and even theoretical and yet be sufficiently "direct" to warrant special district taxation of the properties (*id.* at 395). It is only where the "inherent characteristics of the subject properties preclude them from receiving such services" in a legal or practical sense that taxation will be unauthorized (*id.* at 393).

"In determining whether a property is benefited—i.e., whether it is capable of receiving the municipal service funded

by the special ad valorem levy—we look to the innate features and legally permissible uses of the property, not the particularities of its owners or occupants or the state of the property at a fixed point in time. . . .

"[A] lot that is vacant, but otherwise amenable to development, would be 'benefited.' Although undeveloped, there is no legal or practical disability to the lot's one day receiving garbage collection. Likewise, a hypothetical home whose owners never produced refuse or garbage of any kind would, for the purposes of RPTL § 102 (14), be directly benefited by municipal garbage collection. By the same token, home or business owners could not opt out of a special ad valorem levy funding the local sewer or water district simply by virtue of having a septic tank or well on their properties. The same logic would apply to others who would seek to avoid special ad valorem levies under analogous circumstances. In determining whether a property is capable of receiving a benefit, our focus is on the innate characteristics of an individual property as representative of a species of property (in our last example, homes), not the conditions or proclivities of individual owners" (*id.* at 394).

On the basis of the foregoing, we conclude that the properties at issue here—otherwise vacant or undeveloped lands improved by electric and gas transmission fixtures and appurtenances— are distinguishable from the telephone wires and poles and other fixtures and appurtenances that were the concern of the Court of Appeals in *New York Tel. Co.* Here, in contrast to the situation in *New York Tel. Co.*, there is a sufficient theoretical potential for the properties to be developed in a manner that will result in the generation of garbage, thereby warranting taxation of the properties as part of the special garbage district. Indeed, the record discloses that the properties are already generating refuse, albeit not household or industrial or commercial waste. Petitioner acknowledges that, when its workers maintain the properties, "landscaping debris (*e.g.*, grass clippings, tree clippings, brush)" is generated. Although petitioner argues that it does not "require the use of the garbage district services" furnished by the Town in disposing of that "debris," there nevertheless "is no legal or practical" impediment to the properties' "one day receiving garbage collection" (*id.* at 394). Indeed, respondents assert without contradiction that the Town has never "refused or failed to provide garbage and refuse collection services to any of [petitioner's] properties" within the special district in question. Moreover, the "proclivities of [an] individual owner[ ]," as in declining to avail itself of the services provided, are immaterial to the question of the properties'

benefit from the services and taxability as part of the special district (*id.* at 394). Present—Green, J.P., Hurlbutt, Kehoe, Smith and Hayes, JJ.