OPINION OF THE COURT
Ira B. Warshawsky, J.
Plaintiff Long Island Power Authority (LIPA) moves pursuant to CPLR 3212 for an order granting summary judgment in its action against defendants seeking a declaratory judgment. The action was commenced on August 24, 2007, and the motion was made on February 25, 2008, without engaging in discovery. Predicated on the uncontested facts advanced by plaintiff, and the failure of defendants to identify an argument requiring discovery, the issue is deemed sufficiently ripe for decision.
Plaintiff seeks a declaratory judgment exempting LIPA from the imposition of commercial sewer use assessments, fees, and charges against a property located within Islip, known as Brent-wood (hereinafter the property), an order enjoining defendants from imposing commercial sewer use fees or charges against LIPA on the property, and costs, disbursements, and attorney’s fees. Defendants’ counterclaim for the sum of $2,007,995, of which $1,007,995 is contended to be owed by plaintiff to defendants as a result of the assessments.
Based on the foregoing, the court finds in favor of plaintiff on the demand for the declaratory judgment.
Plaintiff Long Island Power Authority is exempt from taxes and assessments pursuant to Public Authorities Law § 1020-p (part of the LIPA Act [Public Authorities Law § 1020 et seq.]). *163 However, LIPA is required to make disbursements known as PILOTs (payments in lieu of taxes) to municipalities negatively impacted by the removal of local properties from the tax rolls during LIPA’s acquisition of the assets of the Long Island Lighting Company (LILCO) in the 1990s. (Id. § 1020-q.) In addition, LIPA has the power to enter into discretionary agreements with any municipality to pay annual sums in lieu of taxes in respect to properties owned within the municipality. (Id. § 1020-f [w].)
In 2003, LIPA became the owner of a parcel of land that was once part of the now defunct Pilgrim State Psychiatric Center, located in Islip, New York. The previous owners of the property had entered into a connection agreement in 1991 with the local sewer agencies that set out sewer design and a fee structure. LIPA subsequently improved its newly acquired property with two gas-fired electric generation units, which are not attached to the local sewer system, do not generate and are not capable of generating sewage. In 2006, LIPA settled a civil action involving the property through a PILOT agreement with the Assessors of the Town of Islip, agreeing to voluntarily pay approximately $2,000,000 for each tax year from 2003/2004 through 2008/2009.
In 2005, the Suffolk County Sewer Districts notified LIPA that an assessment would be imposed on the property for commercial sewer use for the previous two years and subsequent years. The November 2005 notice stated that LIPA owed Suffolk County Sewer District No. 3 Southwest $804,192, the bulk of which was predicated upon an ad valorem, or value of the property, assessment. LIPA contested the assessments, but defendants rejected the requests for reconsideration. Subsequently, an additional statement, dated May 1, 2007, assessed a further $203,803 against LIPA for commercial sewer use in the period of January 1, 2007 to December 31, 2007, raising the total amount charged to LIPA by the sewer district to $1,007,995. Seeing unheeded its continuing protests to defendants, plaintiff commenced this action, seeking a declaratory judgment exempting LIPA from these assessments and a permanent injunction for the imposition of commercial sewer use fees on the property.
“ ‘To obtain summary judgment it is necessary that the movant establish his cause of action or defense “sufficiently to warrant the court as a matter of law in directing judgment” in his favor (CPLR 3212, *164 subd [b]), and he must do so by tender of evidentiary proof in admissible form.’ ” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].)
In this summary judgment motion for a declaratory judgment on the assessments, plaintiff predicates its motion on three claims: (1) LIPA is exempt from the imposition of commercial sewer use assessments; (2) the connection agreement, upon which defendants rely, does not authorize the imposition of commercial sewer use charges in this case; and (3) LIPA cannot be assessed for commercial sewer use if the property is unconnected and does not use sewer facilities. Defendants, opposing summary judgment in turn, argue that the remedy of summary judgment is inappropriate in this instance, especially before discovery has taken place, and that LIPA has been properly assessed.
Based upon evidence submitted to the court and the uncontested facts of the case, there are sufficient grounds to direct judgment as a matter of law in favor of the plaintiff.
LIPA Cannot be Assessed by the Sewer District
The LIPA Act provides that:
“The authority shall be required to pay no taxes nor assessments upon any of the property acquired or controlled by it or upon its activities in the operation and maintenance thereof or upon income derived therefrom, provided that nothing herein shall prevent the authority from entering into agreements to make payments in lieu of taxes with the governing bodies of municipalities” (Public Authorities Law § 1020-p [2].)
As a tax-exempt public authority, LIPA is not required to pay any taxes or assessments “upon any of the property acquired or controlled by it.” (Id.) However, to cushion the financial blow to those jurisdictions where taxed property was acquired by LIPA from LILCO, LIPA is required, pursuant to Public Authorities Law § 1020-q (1), to make “payments in lieu of taxes.” (Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist., 195 AD2d 140, 143 [2d Dept 1994].)
As the statute clearly states, LIPA is exempted from taxes or assessments generally, and only need make PILOTs on those properties purchased from LILCO. The property at issue in the instant case, in the Town of Islip, was never owned by LILCO, but was rather a defunct mental hospital, such that even PILOTs are not required. Nevertheless, as a volun *165 tary measure, LIPA entered into an agreed PILOT payment schedule with the Town of Islip regarding the property, pursuant to their authority to do so in section 1020-f (w) of the LIPA Act.
The assessment levied upon LIPA by the sewer district falls within the category of taxes and assessments from which LIPA is exempt. That the charge levied on LIPA is an assessment is evident from the district’s seeking of almost exclusively ad valorem charges, and not charges based on actual sewer usage. In fact, defendants’ claim that the sewer bill includes a flow charge and per parcel charge is misleading — there were no flow charges billed and the per parcel charge amounted to approximately $28 per year. (See sewer bill, exhibits 6, 7, 8 to moving papers.) From these bills, it is clear that the overwhelming percentage of the yearly charges were assessments based on property value alone, and are thus a traditional assessment. While LIPA is free to enter into a PILOT agreement with the sewer district if it chooses to do so, there is nothing to compel it to submit to such a payment. The court finds that the assessments, therefore, are invalid.
Connection Agreement
Defendants argue that LIPA is not exempt from the assessments in spite of its designation as a tax-exempt entity in the LIPA Act, since LIPA “has voluntarily received property from the state and clearly has become subject to the State’s Agreement with the County when it became a successor in interest to the Connection Agreement, which Agreement ‘runs with the land.’ ” (Defendant’s mem of law at 5.) This contention runs contrary to the general principle that an agreement in violation of positive legislation is unenforceable and void. (Carmine v Murphy, 285 NY 413 [1941]; Scotto v Mei, 219 AD2d 181 [1st Dept 1996].) The assumption that LIPA, in spite of its status as a tax-exempt entity, is to be held to the terms of assessment outlined in the agreement simply because of the included “runs with the land” provision is rejected. The LIPA Act, intended to benefit the people of the State of New York by providing electricity in a reliable and economic manner, prohibits the imposition of taxes and assessments on LIPA in connection with its property. In examining an agreement in violation of positive legislation, weight is given to the legislative intent of the law, and allowing the sewer district to assess LIPA would contravene the Act’s goal of economy. (See Atkin v Hill, Darlington & Grimm, 15 AD2d *166 362, 367 [1st Dept 1962].) Therefore, the agreement is unenforceable as a violation of positive legislation.
LIPA Cannot be Charged Sewer Rents without Receiving Service
“[S]ewer rents must be based on actual use” (Chelsea Piers Mgt. v Chapin, 7 AD3d 389, 391 [1st Dept 2004]), and sewer fees cannot be charged when the property is not connected to the sewer lines. (See Rock Hill Sewerage Disposal Corp. v Town of Thompson, 27 AD2d 626, 627 [3d Dept 1966], citing General Municipal Law § 451.) In the instant case, the property is serviced by sewer lines. But, as a non-waste-producing facility, it is not connected to the sewer, similar to Chelsea Piers. Because the property receives no benefit from nor is attached to the sewer system, it cannot be charged sewer rents or assessments.
Additionally, ad valorem assessments are inappropriate to a property that does not receive a benefit related to the assessment. (See New York Tel. Co. v Supervisor of Town of Oyster Bay, 4 NY3d 387, 392 [2005].) There, in reviewing an ad valorem assessment of garbage fees to a property incapable of generating trash, the court found that “in determining whether a property is capable of receiving a benefit, our focus is on the innate characteristics of an individual property as representative of a species of property . . . not the conditions or proclivities of individual owners.” (Id. at 394.) It is uncontested that the property, upon which a gas-fired generator lies, does not and cannot generate sewage, is not connected to the sewer, and fails to receive any apparent benefit from the sewer lines that run to the property.
Accordingly, the assessments levied upon the property by defendants are inappropriate and invalid.
Injunction
Plaintiff seeks a permanent injunction barring the imposition of sewer fees against the property. Based on the ruling contained herein, the court does not believe an injunction is a remedy necessary to prevent sewer fees from being assessed by defendants against the plaintiff. The sewer fees at issue are invalid on several grounds, as has been stated, supra. It is not apparent why, in light of this judgment, LIPA requires the added security of the enjoinment of the sewer district from charging the property. There is no risk of injury to plaintiff, and the compliance of defendants with the court’s ruling will obviate any potential assessments from accruing *167 in the future. The request for a permanent injunction is, therefore, denied.
Accordingly, it is ordered and adjudged that LIPA is exempt from the fees and assessments levied upon the property by Suffolk County Sewer Districts, and the Clerk of the County of Nassau is directed to enter judgment in favor of plaintiff.