MEMPHIS & CHARLESTON RAILWAY COMPANY
*v.* PACE ET AL.

No. 8. Argued March 5, 1930. Reargued October 29, 1930.—
Decided January 5, 1931.

Mr. John B. Hyde, with whom Messrs. S. R. Prince, L. E. Jeffries, and Ely B. Mitchell were on the brief, for appellant.

Messrs. W. W. Magruder and Benjamin H. Charles, with whom Mr. James A. Cunningham was on the brief, for appellees.

Messrs. George T. Mitchell, Attorney General of Mississippi, and J. A. Lauderdale, Assistant Attorney General, by special leave of Court, filed a brief on behalf of the State of Mississippi, as amicus curiae

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

By a suit in equity brought in the chancery court of Tishomingo County, Mississippi, the appellant sought an injunction forbidding the collection of a tax levied to make a partial payment upon bonds of the Oldham road district in that county. Among other grounds for such relief the bill assailed the state statutes underlying the

existence of the district and the levy of the tax as being invalid under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. After answer and a hearing the chancery court entered a decree for the defendants, which the Supreme Court of the State affirmed. 154 Miss. 536. An appeal brings the case here.

The road district was created, and commissioners therefor were appointed, by the board of supervisors of the county in February, 1926, under chapter 277 of the state laws of 1920. With an approving vote of the district's electors, and at the request of the commissioners, the board of supervisors then issued and sold bonds of the district in the sum of $6,500 to provide money for the construction and maintenance of public roads in the district—the particular roads to be determined later on as provided in section 5 of chapter 277.

At this stage of the proceedings the state legislature, desiring to put at rest any question respecting the validity of the creation of the district and the issue of the bonds, passed two acts confirming both. One of these acts took effect on March 11, 1926, and the other four days later. The first, being chapter 1080 of the local laws of that year, applied to this district alone. The second, being chapter 278 of the general laws of that year, applied broadly to all districts in the situation of this one, and to others.

After the enactment of the confirmatory measures the commissioners, with the approval of the board of supervisors, designated two roads—one branching from the other—as the ones to be constructed and maintained out of the proceeds of the bonds; and in due course the work of construction was begun and carried to completion.

In November, 1926, the board of supervisors, at the request of the commissioners, levied on all taxable property, real and personal, within the district an ad valorem tax to meet the first instalment of interest and principal

upon the bonds, that instalment being payable in the following February. The tax was four-tenths of one per cent of the assessed value of the property as fixed for state and county taxes. The amount so charged on the appellant's property was about $450, and this is the tax against which the suit is directed.

The Supreme Court of the State in the decision under review holds that the creation of the road district, the issue of the bonds and the levy of the tax were all valid under the state constitution and the acts before cited; that the board of supervisors in creating the district acted in a legislative capacity, they being invested by the constitution and statutes of the State with discretion to create the district, or refuse to create it, according to their judgment of the best interests of all concerned; and that the two confirmatory acts were valid under the state constitution and operated to make the district a legislatively created district if it was not such before. These were all questions of state law, and their decision by that court is controlling here.

Counsel for the appellant so understand the situation, for in their last brief they say "that it [appellant] and this Court are bound by the decision of the State's highest court relating to the state constitution and state statutes and that it is no longer possible here for appellant to contend that the district was invalidly organized or that the special validating act approved as constitutional under the constitution of Mississippi did not serve to place the Oldham road district in the class of legislatively created districts." And also that "the Supreme Court of Mississippi in the decision below expressly held that the board of supervisors of a Mississippi county was vested with authority to deny the petition to create the district. Districts thus created, within the discretion of the board of supervisors, are, therefore, under this decision, equivalent to legislatively created districts, and hence a taxpayer

whose property is included therein is not entitled to notice and hearing within the doctrine aforesaid of *Browning* v. *Hooper,* [269 U. S. 396]."

The only question presented in the Supreme Court of the State which is open here is whether the act of 1920 and the confirmatory acts of 1926, as construed and applied in this case, are invalid as authorizing the imposition of a tax which is so palpably arbitrary and unreasonably discriminatory that it offends the due process and equal protection clauses of the Fourteenth Amendment.

On the part of the appellant the tax is said to be thus objectionable, because it is imposed to pay for local road improvements and is not apportioned according to benefits but is laid upon all the property, real and personal, within the district on an ad valorem basis; because the property of the appellant, and particularly its personal property, receives no benefit from the improvements; and because, even if there be some benefit to the appellant's property, the tax laid thereon is disproportionate to the benefit and to the tax laid on other property.

The construction and maintenance of serviceable roads in any community is a matter in which the whole community has an interest and is a typical public purpose for which property may be taxed by the State. *Missouri Pacific R. R. Co.* v. *Crawford Road District,* 266 U. S. 187, 190. Whether the tax shall be state wide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing unit, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the State, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment. *County of Mobile* v. *Kimball,* 102 U. S. 691, 703; *Spencer* v. *Merchant,* 125 U. S. 345, 355–356; *Houck* v. *Little River District,* 239 U. S. 254, 262, 265; *Valley Farms Co.* v. *West-*

*chester,* 261 U. S. 155; *Missouri Pacific R. R. Co.* v. *Crawford Road District, supra; Kansas City Southern Ry. Co.* v. *Road Improvement District No. 3,* 266 U. S. 379, 386.

But, however the tax may be laid, if it be palpably arbitrary, and therefore a plain abuse of power, it falls within the condemnation of the due process clause, *Houck* v. *Little River District, supra; Valley Farms Co.* v. *Westchester, supra;* and if it be manifestly and unreasonably discriminatory it falls within the condemnation of the equal protection clause. *Gast Realty Co.* v. *Schneider Granite Co.,* 240 U. S. 55; *Kansas City Southern Ry. Co.* v. *Road Improvement District No. 6,* 256 U. S. 658; *Thomas* v. *Kansas City Southern Ry. Co.,* 261 U. S. 481; *Road Improvement District No. 1* v. *Missouri Pacific R. R. Co.,* 274 U. S. 188.

Where the tax is laid generally on all property or all real property within the taxing unit, it does not become arbitrary or discriminatory merely because it is spread over such property on an ad valorem basis; nor where the tax is thus general and ad valorem does its validity depend upon the receipt of some special benefit as distinguished from the general benefit to the community. *St. Louis & Southwestern Ry. Co.* v. *Nattin,* 277 U. S. 157; *Valley Farms Co.* v. *Westchester, supra; Houck* v. *Little River District, supra; Miller & Lux* v. *Sacramento Drainage District,* 256 U. S. 129; *Missouri & Pacific R. R. Co.* v. *Crawford Road District, supra.*

The Oldham road district was created, not as a temporary expedient to accomplish a particular road improvement and defray the cost of that work, but as a permanent agency invested with continuing authority to provide and maintain suitable district roads under the supervision of the county board. The state laws provide for accomplishing road improvements and paying therefor in two distinct ways—one through special benefit assessment districts

and the other through established local districts authorized to defray the cost by general taxes. In the decision under review the Supreme Court of the State holds that the Oldham district is "not a special benefit assessment district" but one wherein road improvement expenses and bonds issued therefor are to be paid by general taxes.

The district is rural, comprises four full sections of land and fractions of two sections, 2950 acres in all, and is about two miles wide and two and a half miles long. The railroad of the appellant extends through the southerly part of the district for about two miles and for about a half mile more lies just inside the southerly line. The appellant's property in the district consists of right of way, 2.88 miles of main track, 2.69 miles of side track, section house site and a small fraction of its rolling stock. The value of this property as assessed for state and county taxes was $113,200, and the value of other property in the district as so assessed was $68,246, making a total of $181,446. These valuations are not questioned here.

When the district was organized it was not far advanced or well developed. Along the appellant's railroad were two large and extensively worked gravel pits with an output of about 8,000 cars a year, which were being shipped over the appellant's railroad and were bringing it a gross yearly return of about $250,000. The gravel was of superior quality, of almost inexhaustible quantity, and in much demand. Relatively small quantities of pulpwood and lumber were also being shipped from the district over the appellant's railroad in car load lots. Grain and other products of the district destined to be shipped away usually were hauled by the producers to a nearby town which was on the appellant's railroad and without other railroad facilities. The Lee Highway, a good road leading to that town, crossed the most southerly part of the district south of and near the appellant's railroad. Another good road leading to the same town lay north of the dis-

trict. But, apart from the Lee Highway, the roads then in the district were not good at any time and in some seasons were almost impassable.

When the bonds were voted, issued and sold it was not known what road or roads would be constructed with the proceeds, for as yet no road had been selected. Under the state law that matter remained open until the selection was made by the commissioners and approved by the county supervisors. *Board of Supervisors* v. *Callender,* 128 Miss. 159.

The roads ultimately selected and actually constructed are in the form of an inverted Y with the stem extending to the northerly line of the district and the arms extending to the two gravel pits and the adjacent side tracks of the appellant's railroad near the southerly line. From each arm there is a connection with the Lee Highway near the southern border of the district and at the other end of the stem there is a connection leading to the road on the north. The roads so constructed are not parallel to the appellant's railroad, but practically at right angles to it.

The appellant sought by its evidence to prove that these roads could be of no benefit whatever to it. Part of this evidence tended merely to show that railroads receive no benefit from public roads running parallel to them, and so was not in point. And much of it came from witnesses whose knowledge of the relevant conditions within the district and surrounding it was so meagre that little weight could be accorded to their testimony. On the other hand, the appellees produced witnesses having some familiarity with the district and its surroundings whose testimony, although open to some criticism, tended to show that the roads would be of real benefit to the appellant both by enabling it to retain old business and by bringing new business to it. Both state courts found that there would be appreciable benefit, and we think

their finding has such support in the evidence that it should not be disturbed.

Upon applying the settled rules before stated to the case presented, we are of opinion that the appellant has not shown that the tax imposed under the sanction of the state statutes is either palpably arbitrary or unreasonably discriminatory. It was imposed for what obviously is a public purpose. It was a general tax and admissibly was spread over all the taxable property in the district according to the value thereof as fixed by the assessment for state and county taxes. The appellant was afforded ample opportunity by the state law to be heard on that assessment and to have it corrected if erroneous or unfair, and is not challenging it now. The chief complaint made here is that the imposition of the tax on an ad valorem basis was " inherently invalid " under the due process and equal protection clauses. That complaint is not tenable, as is shown in several cases before cited. And, as the tax was general and ad valorem, its validity, as was held in *St. Louis & Southwestern Ry. Co.* v. *Nattin, supra,* " does not depend upon the receipt of any *special* benefit by the taxpayer."

*Judgment affirmed.*