*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAY DeVILBISS, | ) | |
| | ) | Supreme Court No. S-15344 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-12-01028 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MATANUSKA-SUSITNA | ) | |
| BOROUGH, | ) | No. 7038 – August 28, 2015 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Ray DeVilbiss, pro se, Palmer, Appellant. Blake F. Quackenbush, Law Office of Blake Fulton Quackenbush, Anchorage, for Appellant at oral argument. Nicholas Spiropoulos, Borough Attorney, Palmer, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.    INTRODUCTION

A property owner whose property is within a road service area does not make use of the roads built and maintained with the road service taxes levied on all real property within the service area. He contends that Alaska law requires that his property be excluded from the service area and that the tax is invalid absent a special benefit to

his property, as opposed to the general benefit to the service area. The superior court rejected these claims and granted the borough that oversees the service area summary judgment. Because Alaska law neither requires boroughs and municipalities to exclude properties that do not make use of roads financed by road service taxes nor ties the validity of a tax to each taxpayer's receipt of a special benefit, we affirm the grant of summary judgment.

## II.    FACTS AND PROCEEDINGS

In 1981 a road service area (RSA) in Matanuska-Susitna Borough was expanded by annexing territory that had not previously been part of the RSA. Ray DeVilbiss is the owner of three pieces of property that joined the RSA in the 1981 annexation. His farm abuts Clark-Wolverine Road, which currently is maintained by the State, not the RSA. He alleges that he makes no use of the roads that are maintained by the RSA.

In 2011 DeVilbiss petitioned the Matanuska-Susitna Borough Assembly, requesting that they remove his property from the RSA. The assembly denied his petition. DeVilbiss then filed a complaint against the Borough. The Borough opposed and moved to dismiss, a motion the superior court granted as to several claims it found non-justiciable. The Borough moved for partial reconsideration, and on reconsideration the superior court dismissed another claim as non-justiciable.

DeVilbiss then amended his complaint. His amended complaint contested the validity of the road service tax on a variety of statutory, common law, and constitutional grounds.

The Borough moved for summary judgment on one question of statutory construction. DeVilbiss opposed the Borough's motion and moved "for judgment on the pleadings" in his favor. The Borough opposed and cross-moved for summary judgment on the entire case, a motion DeVilbiss opposed.

The superior court granted the Borough's cross-motion for summary judgment. It characterized DeVilbiss's claims as "fall[ing] into two basic categories: (i) whether AS 29.35.450(c)(4) requires that the Borough remove his properties from RSA 19; and (ii) whether the RSA 19 tax is unlawful."

As to the first category of claims, the superior court rejected DeVilbiss's argument that the statute required that his property be removed: "The plain language of subsection .450(c)(4) does not create any mandate for agency action. Subsection .450(c)(4) specifically creates an exception to the voting requirement outlined in subsection .450(c); the subsection contains no language directing the Borough to take any action." The superior court further found that the legislative history supported the same reading.

As to the second category of claims, the superior court identified and rejected DeVilbiss's four challenges to the lawfulness of the RSA tax.

First, DeVilbiss argued that because he did not receive a special benefit from the road services funded by RSA taxes, the taxes violated the equal protection and due process clauses of the Alaska Constitution. The superior court rejected this argument, concluding that "Alaska law appears to hold that a benefit is not required." It found this rule to be consistent with United States Supreme Court precedent, which the superior court found asked "whether the tax is either palpably arbitrary or unreasonably discriminatory, not whether some special benefit is conferred." Because this tax was neither, the superior court concluded that it was constitutionally valid.

Second, DeVilbiss argued that the ad valorem tax actually collected was invalid because the Borough was required to fund the RSA with special assessments instead. The superior court concluded that article X, section 5 of the Alaska Constitution and AS 29.45.010 left the choice of funding mechanism "to the discretion of the Borough."

Third, DeVilbiss argued that several statutory provisions specifically required that every person taxed in a service area enjoy a benefit from those taxes. The superior court did not specifically address this argument in the portion of its order that explained its reasons for granting the Borough summary judgment.

Finally, DeVilbiss argued that the ballot language used in the 1981 annexation vote "created a binding contract," which "acted as a guarantee against future taxes." The superior court found this argument time-barred by the 20 years that had passed since taxes were first collected in the RSA. It further found that, on the merits, the ballot language was clearly an estimate and "did not provide any guarantees against future taxation."

Following the grant of summary judgment, the Borough moved for attorney's fees. The parties briefed whether AS 09.60.010 shielded DeVilbiss from being required to pay fees associated with his constitutional claims. The superior court found that DeVilbiss was ineligible for the statutory protection because he had sufficient economic incentive to bring his claims. It therefore awarded the Borough $2,295 in attorney's fees, 20 percent of the fees necessarily and reasonably incurred.

DeVilbiss appeals both the grant of summary judgment and the grant of attorney's fees.

## III. STANDARDS OF REVIEW

"We review grants of summary judgment de novo, exercising our independent judgment to determine whether the parties genuinely dispute any material facts and, if not, whether the undisputed facts entitle the moving party to judgment as a matter of law."[1]

---

[1]     *Price v. Kenai Peninsula Borough*, 331 P.3d 356, 358-59 (Alaska 2014) (quoting *Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 897 (Alaska 2003)).

"We apply our independent judgment to questions of law, adopting 'the rule of law that is most persuasive in light of precedent, reason, and policy.' When a question of statutory interpretation is involved, we will independently evaluate the trial court's interpretation."[2] "We interpret Alaska law 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[3]

" 'A trial court's award of attorney's fees is generally reviewed for abuse of discretion. An abuse of discretion exists if an award is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive.' The trial court's application of law in awarding attorney's fees is reviewed de novo."[4]

## IV.  DISCUSSION

On appeal, DeVilbiss makes four arguments: (1) that the existence of material questions of fact made summary judgment inappropriate; (2) that state law requires the Borough to exclude his property from the RSA; (3) that various constitutional and statutory restrictions invalidate the road service tax; and (4) that he is a public interest litigant and thus exempt from the imposition of attorney's fees.[5]

---

[2]     *Young v. Embley*, 143 P.3d 936, 939 (Alaska 2006) (quoting *Lawson v. Lawson*, 108 P.3d 883, 885 (Alaska 2005)).

[3]     *Id.* (quoting *Native Village of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[4]     *Bachner Co. v. Weed*, 315 P.3d 1184, 1189 (Alaska 2013) (quoting *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 252 (Alaska 2009)).

[5]     Following oral argument, DeVilbiss filed a notice of supplemental authority. *See* Alaska R. App. P. 212(c)(12). Three of the four cases DeVilbiss cited relate to the Alaska Constitution's guarantees of due process and equal protection. *See Malabed v. N. Slope Borough*, 70 P.3d 416, 420-21 (Alaska 2003) (equal protection); *City of Homer v. State, Dep't of Natural Res.*, 566 P.2d 1314, 1319 (Alaska
(continued...)

Because whether there are material questions of fact depends on the applicable legal standards, we address the questions of law first.

**A.** **Alaska Statute 29.35.450(c)(4) Does Not Require The Borough To Exclude Property From The RSA.**

"A service area is a specific geographical area within which a municipal service is furnished by a borough. Its powers derive from statute, charter and ordinance."[6] The Alaska Constitution permits the assembly to establish, alter, or abolish "[s]ervice areas to provide special services within an organized borough."[7] Alaska Statute 29.35.450, in turn, grants boroughs and unified municipalities the ability to establish, operate, alter, and abolish services areas.

Subsection (c) of AS 29.35.450, the section at issue here, reads:

> If voters reside within a service area that provides road, fire protection, or parks and recreation services, abolishment of the service area is subject to approval by the majority of the voters residing in the service area who vote on the question. A service area that provides road, fire protection, or parks and recreation services in which voters reside may not be abolished and replaced by a larger service area unless that proposal is approved, separately, by a majority of the voters

---

[5](...continued)
1977) (due process); *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974) (substantive due process). The fourth relates to the political question doctrine. *See Kanuk ex rel. Kanuk v. State, Dep't of Natural Res.*, 335 P.3d 1088, 1096-97 (Alaska 2014) (political question). Because DeVilbiss has not raised his due process and equal protection claims on appeal, and because we do not dismiss his appeal as involving a non-justiciable political question, this supplemental authority does not alter our analysis.

[6]  *N. Kenai Peninsula Rd. Maint. Serv. Area v. Kenai Peninsula Borough*, 850 P.2d 636, 639 (Alaska 1993).

[7]  Alaska Const. art. X, § 5.

who vote on the question residing in the existing service area and by a majority of the voters who vote on the question residing in the area proposed to be included within the new service area but outside of the existing service area. A service area that provides road, fire protection, or parks and recreation services in which voters reside may not be altered or combined with another service area unless that proposal is approved, separately, by a majority of the voters who vote on the question and who reside in each of the service areas or in the area outside of service areas that is affected by the proposal. This subsection does not apply

. . . .

(4) to a change in the boundaries of a road service area to exclude a subdivision or parcel that does not rely on the use of roads maintained by the service area for the subdivision's or parcel's only access or for access that is required by the subdivision plat or by other regulation or ordinance.

By its plain language, AS 29.35.450(c)(4) sets out a condition under which "[t]his subsection [that is, (c),] does not apply." Subsection (c) restricts the power that subsection (a) grants a borough or unified municipality to establish, operate, alter, or abolish a service area by requiring that certain changes be approved by voters. When (c)(4) makes that restriction inapplicable, the Borough retains all of the power and discretion granted in (a), an entirely permissive subsection.[8] The inapplicability of (c) does not mandate any action.

Determining the plain meaning of the statute is not the whole inquiry; we also look to the legislative purpose and the intent of the statute. We have adopted a sliding scale approach to statutory interpretation, under which "[t]he plainer the statutory

---

[8]    *See* AS 29.35.450(a) ("A service area to provide special services in a borough or unified municipality may be established, operated, altered, or abolished by ordinance, subject to (c) of this section.").

language is, the more convincing the evidence of contrary legislative purpose or intent must be."[9]  "We apply this sliding scale approach even if a statute is facially unambiguous."[10]  The legislative history of AS 29.35.450(c)(4) confirms that the plain meaning captures the statute's purpose and intent.

The sponsor statement, attached to the 2007 House Bill that amended AS 29.35.450 by adding subsection (c)(4), offers insight into the legislative intent and statutory purpose of the provision.  Then-Representative John Coghill wrote that the amendment "provides boroughs with a means of altering existing road service area boundaries to ensure taxpayer fairness among residents of service areas."[11]  One of the ills then-Representative Coghill identified

> arises where residents of a service area are required to pay into a service area even though they do not utilize the service area roads for access to their property. Service areas, however, are often reluctant to vote to remove property from the service area because it effectively raises taxes on the remaining property owners.[12]

The statement concludes that subsection (c)(4) "allow[s] a borough assembly to exercise its judgment to alter, by ordinance, a service area boundary to exclude a property that

---

[9]    *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011) (quoting *Gov't Emp. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

[10]   *Id.*

[11]   Rep. John Coghill, Sponsor Statement for H.B. 185, 25th Leg., 1st Sess. (May 13, 2007), *available at* Alaska Leg. Microfiche Collection No. 12086.

[12]   *Id.*

does not use service area roads as its sole or legally required access."[13]

It is apparent that property like DeVilbiss's was part of the motivation behind subsection (c)(4). It is equally apparent, however, that the statutory relief offered was an exception from subsection (c)'s voting requirements, not a mandatory exclusion from the service area for such property. The amendment increased the Borough's ability "to exercise its judgment" to exclude property like DeVilbiss's without having to seek voter approval; it did not dictate how that exercise of judgment was to come out. Subsection (c)(4) made it easier for DeVilbiss to seek a political remedy, but it did not create a judicial remedy.

Based on the plain meaning of the statute and the indications of legislative purpose and intent found in the legislative history, we hold that AS 29.35.450(c)(4) does not require the Borough to exclude DeVilbiss's property from the RSA.

## B.     The Road Service Tax Is Permissible.

DeVilbiss advances three arguments against the validity of the tax collected to pay for road services in the RSA: (1) that the tax is actually a special assessment and thus must be apportioned by reference to the benefit received and used only to finance capital improvements; (2) that the Borough required additional voter approval before it had the power to enact the tax; and (3) that the tax is invalid absent a documented benefit to his property.

---

[13]     *Id.*

## 1. The tax is not a special assessment.

DeVilbiss argues that what the Borough labels an ad valorem tax is in fact "an illegal special assessment for services from which he derives no benefit."[14]  If correct, this argument might invalidate the levy, as Alaska law only permits special assessments to pay for "capital improvements," and not routine maintenance and services.[15]  However, DeVilbiss confuses the method of calculation with the purposes to which the resulting funds are put.

The Alaska Constitution grants the assembly the power to "authorize the levying of taxes, charges, or assessments within a service area to finance the special services."[16]  The distinction between these methods of financing is how an individual's obligation is calculated.  Ad valorem taxes are "proportional to the value of the thing taxed," in this case real property.[17]  Special assessments, in contrast, are calculated "in proportion to the benefit received."[18]  Contrary to DeVilbiss's argument, whether a

---

[14]     This argument is arguably "waived because, as we have repeatedly held, 'a party may not raise an issue for the first time on appeal.' " *Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 14 (Alaska 2014) (quoting *Hymes v. DeRamus*, 222 P.3d 874, 889 (Alaska 2010)).  Before the superior court, DeVilbiss repeatedly argued that " 'ad valorem' is how the [Borough] is collecting moneys for 'special services.'  With a mill rate on property values." (Emphasis deleted.)  However, because the Borough does not argue that DeVilbiss waived this point, we will address its merits.

[15]     *See* AS 29.46.010(a) ("A municipality may assess against the property of a state or federal governmental unit and private real property to be benefited by an improvement all or a portion of the cost of acquiring, installing, or constructing capital improvements.").

[16]     Alaska Const. art. X, § 5; *see also* AS 29.35.470(a) (same).

[17]     BLACK'S LAW DICTIONARY 63 (10th ed. 2014).

[18]     AS 29.46.060(a).

particular levy is a tax or an assessment does not depend on the use to which the resulting funds are put, and we will not interfere with the Borough's choice to use a tax, charge, or assessment to finance its activities.[19]

The evidence in this case clearly establishes that DeVilbiss pays a tax rather than an assessment. His tax bill includes a line for "Lazy Mountain RSA," which is calculated by applying a mill rate to the assessed value of his property. This is the classic method of calculating ad valorem property taxes. The Borough exercised its powers under the Alaska Constitution and AS 29.35.470 to levy a tax in the RSA, and the way the collected funds were spent could not turn that tax into a special assessment.

### 2. The Borough has statutory authority to tax for road services.

DeVilbiss argues that because Matanuska-Susitna is a second-class borough, it requires an additional vote of RSA residents, beyond the vote that set the RSA's borders, in order to have the power to tax for road services. This argument ignores the specific taxing authority the legislature has conferred on the Borough.

Matanuska-Susitna is a second-class borough, which makes it "a 'general law' municipality, meaning that it only has those powers conferred by statute."[20] We interpret statutory grants of taxing authority "in favor of the broad power of municipal governments."[21] Article X, section 1 of the Alaska Constitution establishes that "[a] liberal construction shall be given to the powers of local government units." We have

---

[19] *See Fairbanks N. Star Borough v. Coll. Utils. Corp.*, 689 P.2d 460, 465 (Alaska 1984).

[20] *Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1128, 1131 n.1 (Alaska 2012) (citing Alaska Const. art. X, § 11 and AS 29.04.020).

[21] *City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1007 (Alaska 2000).

concluded that this provision "restrains us from implying limitations 'on the taxing authority of a municipality where none are expressed.' "[22]

The parties direct our attention to three statutory provisions relevant to the Borough's statutory authority to tax RSA residents for road services. Alaska Statute 29.35.470 empowers the assembly to "levy or authorize the levying of taxes, charges, or assessments in a service area to finance the special services."[23] Alaska Statute 29.45.010 grants boroughs the power to "levy . . . a property tax in a service area for functions limited to the service area."[24] And AS 29.35.490(a) provides:

> A second class borough may exercise in a service area any power granted a first class city by law or a nonareawide power that may be exercised by a first class borough if
>
> (1)     the exercise of the power is approved by a majority of the voters residing in the service area; or
>
> (2)     all owners of real property in the service area consent in writing to the exercise of the power if no voters reside in the service area.

DeVilbiss argues that the last of these three provisions, AS 29.35.490, requires the Borough to attain voter approval before it has the power to levy the road services tax. He offers no support for his reading of this statute as the sole source of authority over service areas for second-class boroughs and no reason to ignore AS 29.45.010, the statutory provision that authorizes boroughs to levy property taxes in service areas to pay for the services provided. We have previously held that if a borough

---

[22]     *City of St. Mary's*, 9 P.3d at 1007 (quoting *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1121 (Alaska 1978)) (additional footnote omitted).

[23]     AS 29.35.470(a).

[24]     AS 29.45.010(a)(3).

is authorized to provide a special service, it also has statutory authority to levy taxes to finance those services.[25] We reaffirm that holding today.

### 3. The validity of a tax does not depend on whether a taxpayer receives a special benefit.

DeVilbiss's final argument against the validity of the road service tax focuses on the fact that he allegedly receives no specific benefit from the programs and services that the tax funds. This contention requires us to decide whether a taxpayer can only be validly taxed if he receives some benefit from the projects the tax funds. We hold that the validity of a tax does not depend on whether a taxpayer receives a special benefit.

The United States Supreme Court has considered DeVilbiss's argument in its interpretation of the federal constitution. In *Memphis & Charleston Railway Co. v. Pace*, a railroad alleged that it received no benefits from the road services for which it was taxed and thus that the taxes violated the due process and equal protection clauses.[26] The Supreme Court rejected that interpretation and instead held that the validity of ad valorem taxes does not "depend upon the receipt of some special benefit as distinguished from the general benefit to the community."[27] In subsequent years, the Supreme Court has reaffirmed that "the constitutional power to levy taxes does not depend upon the enjoyment by the taxpayer of any special benefit from the use of the funds raised by

---

[25]    *See Fairbanks N. Star Borough v. Coll. Utils. Corp.*, 689 P.2d 460, 464 (Alaska 1984) (holding "that the Borough was authorized to exercise road construction powers in the College Service Area and, under AS 29.63.090(b), [the predecessor statute to AS 29.45.010,] could properly levy taxes to finance such construction").

[26]    282 U.S. 241, 245 (1931).

[27]    *Id.* at 246; *see also St. Louis & Sw. Ry. Co. v. Nattin*, 277 U.S. 157, 159 (1928) ("As the assailed tax was general and ad valorem, its legality does not depend upon the receipt of any special benefit by the taxpayer.").

taxation."[28] It explained its reasoning most thoroughly in *Carmichael v. Southern Coal & Coke Co.*:

> A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government — that it exists primarily to provide for the common good.[29]

Effectively every state high court to have considered the same question with regard to its state constitution has reached the same conclusion as the Supreme Court.[30] The only exceptions are New York's appellate courts, which have held that only property that is "capable of receiving the service funded by the special ad valorem levy" may be subject to special district taxes.[31] However, this holding reflects not the state

---

[28] *Nashville, Chattanooga & St. Louis Ry. v. Wallace*, 288 U.S. 249, 268 (1933).

[29] 301 U.S. 495, 522-23 (1937) (citation omitted).

[30] *See, e.g.*, *People ex rel. Averna v. City of Palm Springs*, 331 P.2d 4, 10 (Cal. 1958); *Friends of Chamber Music v. City & Cnty. of Denver*, 696 P.2d 309, 321-22 (Colo. 1985); *People ex rel. Hanrahan v. Caliendo*, 277 N.E.2d 319, 323-34 (Ill. 1971); *Stottlemeyer v. Gen. Motors Corp.*, 250 N.W.2d 486, 490-91 (Mich. 1977); *Capitol Novelty Co. v. Evatt*, 61 N.E.2d 211, 213 (Ohio 1945).

[31] *N.Y. Tel. Co. v. Supervisor of Oyster Bay*, 828 N.E.2d 964, 966 (N.Y. 2005).

constitution, but instead a New York statute that dictates that special districts only contain "benefited real property."[32] Alaska has no analogous statute.[33]

We adopt the reasoning of our sister courts and hold that the validity of a tax does not depend on whether a taxpayer receives a special benefit. Taxes must have a public purpose,[34] but the programs they fund need not specially benefit every taxpayer who is required to contribute his share. Childless couples pay taxes that fund schools, incorporeal corporations pay taxes that fund hospitals, and RSA residents who exclusively use state-maintained roads pay taxes that fund road services elsewhere in their service area. A tax bill is not a ledger to be balanced by the receipt of special benefits; it is "a means of distributing the burden of the cost of government."[35] The tax challenged in this case is valid.

## C. There Are No Material Questions Of Fact.

Because we conclude that a tax need not provide a special benefit to every taxpayer to be valid, there are no genuine issues of material fact in dispute. The superior court was therefore correct to grant the Borough summary judgment.

## D. It Was Not Error To Assess Attorney's Fees Against DeVilbiss.

Under Alaska Civil Rule 82(b)(2), in cases resolved without a trial in which the prevailing party recovers no money judgment, the prevailing party is entitled to

---

[32] N.Y. REAL PROP. TAX LAW § 102(14) (McKinney 2014); *see id.*

[33] *See, e.g.*, AS 29.35.450 (listing conditions on the creation of service areas).

[34] Alaska Const. art. IX, § 6; *see also Weber v. Kenai Peninsula Borough*, 990 P.2d 611, 614-15 (Alaska 1999); *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1248 (Alaska 1995).

[35] *Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 522 (1937).

"20 percent of its actual attorney's fees which were necessarily incurred."[36] But AS 09.60.010 shields non-prevailing litigants from attorney's fee awards associated with non-frivolous constitutional claims, so long as "the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved."[37] DeVilbiss argues that the superior court erred when it concluded that "he had sufficient economic incentive to bring [his constitutional claims]" and awarded Rule 82(b) attorney's fees against him. We cannot agree with DeVilbiss.

When determining a litigant's primary purpose in bringing a constitutional claim, "[w]e generally examine two factors — the nature of the claim and relief sought and the direct economic interest at stake."[38] Here DeVilbiss sought both injunctive relief against future road services tax assessments and an order directing the Borough to credit his property tax account with all of his road services tax payments during the 20-year period the tax had been collected. The direct economic benefit of a successful suit would have been in the tens of thousands of dollars: At the time of the litigation DeVilbiss was paying approximately $1,500 a year in road services taxes. Under any standard of

---

[36]     Alaska R. Civ. P. 82(b)(2).

[37]     AS 09.60.010(c)(2). *See also Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 279-84 (Alaska 2015) (analyzing meaning of "sufficient economic incentive" under AS 09.60.010); *id.* at 281-82 (focusing on "primary purpose" and stating that "[a] litigant has sufficient economic incentive to bring a claim when it is brought primarily to advance the litigant's direct economic interest, regardless of the nature of the claim").

[38]     *Alaska Conservation Found.*, 350 P.3d at 282.

review,[39] DeVilbiss had sufficient economic incentive to bring his claim against the Borough regardless of the constitutional nature of that claim.[40]

Accordingly, we cannot conclude that the superior court erred by awarding Rule 82(b) attorney's fees against DeVilbiss.

## V.    CONCLUSION

We AFFIRM the superior court's decision.

---

[39]    *See id.* at 284 n.60 (recognizing that we have not yet determined the appropriate standard of review for trial courts' "sufficient economic incentive" determinations).

[40]    *See, e.g.*, *In re 1981, 1982, 1983, 1984 & 1985 Delinquent Prop. Taxes Owed to the City of Nome, Alaska*, 780 P.2d 363, 368 (Alaska 1989) (concluding that tens of thousands of dollars in tax relief was "sufficient economic incentive" to bring claim notwithstanding that issue was of public importance (under former public interest litigation doctrine)).