*Notice: This order is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| **State of Alaska, Department of Health & Social Services,** | Supreme Court No. **S-16123** |
| Appellant, | **Order** |
| v. | Order No. 0107 — September 6, 2019 |
| **Planned Parenthood of the Great Northwest,** | |
| Appellee. | |

Trial Court Case No. **3AN-14-04711CI**

Before:     Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

Winfree, Justice, concurring with attorney's fees ruling.

Stowers, Justice, concurring.

On consideration of the motion for attorney's fees and costs filed by Planned Parenthood of the Great Northwest on 4/16/2019, and the opposition filed by State of Alaska, DHSS on 5/6/2019, **IT IS ORDERED**:

The motion is **GRANTED** with respect to attorney's fees and Appellate Rule 508(d) costs as follows:

Pursuant to AS 09.60.010, Appellee is the prevailing party, and Appellant shall pay Appellee's full reasonable attorney's fees of $98,625.00; and,

As authorized by Appellate Rule 508(d), Appellant shall pay Appellee $505.48 for costs associated with copies and postage.

In addition to the specific costs delineated in Appellate Rule 508(d), and awarded above, Planned Parenthood has requested recovery of "$1,791.39 in reasonable travel expenses" for its lead attorney's travel to Anchorage for oral argument. In *State, Department of Education v. Nickerson* we recognized that "[t]he costs included in Appellate Rule 508(d) are not meant to preclude the . . . court's exercise of its sound discretion in awarding additional costs in a particular case."[1] Because the requested travel expenses are for Appellee's advocate at oral argument, this portion of the motion is **GRANTED** as follows:

Appellant shall pay Appellee $1,791.39 in reasonable travel expenses.

Entered at the direction of the court.

Clerk of the Appellate Courts

_____/s/_____

Meredith Montgomery

---

[1]    711 P.2d 1165, 1170 (Alaska 1985).

WINFREE, Justice, concurring in the order for full reasonable attorney's fees.

I write separately to explain the legal basis for my agreement with the court awarding full reasonable attorney's fees to Planned Parenthood of the Great Northwest for prevailing against the State of Alaska in this appeal concerning rights under the Alaska Constitution.[1] Specifically, I write to address the State's argument that Planned Parenthood cannot be a constitutional claimant entitled to full reasonable attorney's fees under AS 09.60.010(c)(1) because it had "sufficient economic incentive" to litigate the constitutional claim regardless of its constitutional nature.[2]

Although the court implicitly rejects the State's sufficient economic incentive defense, the parties did not brief and the court does not address this important question: Is a court's determination whether a party has sufficient economic incentive to litigate a constitutional claim, regardless of its constitutional nature, a discretionary decision or a legal conclusion based on the nature of the litigation? In our seminal decision about the meaning of sufficient economic incentive under AS 09.60.010(d)(2),

---

[1]  *See* AS 09.60.010(c)(1) (providing, subject to AS 09.60.010(d) and (e), that court "shall award" claimant "full reasonable attorney fees," regardless of claimant's formal role in litigation, for prevailing "concerning the establishment, protection, or enforcement" of constitutional right).

[2]  *See* AS 09.60.010(d)(2) (providing that attorney's fees award under AS 09.60.010(c)(1) shall be made only if constitutional claimant "did not have sufficient economic incentive to bring the suit, regardless of the constitutional claims involved").

Alaska Statute 09.60.010(d)(1) provides that a court shall include in the award only that portion of the constitutional claimant's attorney's fees devoted to constitutional claims on which the claimant actually prevailed. The only issue on appeal was whether the trial court erred in ruling that the challenged laws violated the equal protection rights of indigent women. The State rightfully does not rely on this provision to contest Planned Parenthood's appellate attorney's fees request.

*Alaska Conservation Foundation v. Pebble Ltd. Partnership*,[3] we noted, without deciding (and observing a lack of briefing on the issue), that the determination conceivably could be a discretionary determination or a mixed question of fact and law.[4] We reiterated that point when affirming attorney's fees awards against constitutional claimants in *DeVilbiss v. Matanuska-Susitna Borough*[5] and *Thomas v. State*.[6] But in *Alaska Miners Ass'n v. Holman* we reversed a trial court's award of attorney's fees against constitutional claimants, rejecting the trial court's sufficient economic incentive determination, apparently as a legal matter; the relevant standard of review discussion reflects that we considered the matter one of statutory interpretation.[7]

---

[3] 350 P.3d 273, 280-82 (Alaska 2015) (noting that legislature abrogated and replaced common law "public interest litigant" attorney's fees framework with AS 09.60.010's "constitutional claimant" attorney's fees framework; holding that prior interpretations of "sufficient economic incentive" under public interest litigant framework "provide the guiding parameters for the meaning of 'sufficient economic incentive' under AS 09.60.010"; stating that constitutional claimant has sufficient economic interest when claim "is brought primarily to advance the litigant's direct economic interest"; and stating that two factors — "the nature of the claim and relief sought and the direct economic interest at stake" — generally are examined to determine primary purpose).

[4] *Id.* at 284 n.60. We did not need to decide the question because, based on our own evaluation, "[u]nder any standard of review" the superior court erred in determining that the constitutional claimant had sufficient economic interest to bring the lawsuit regardless of the constitutional nature of the claims. *Id.* at 284.

[5] 356 P.3d 290, 299 n.39 (Alaska 2015) (discussing our "recogni[tion] that we have not yet determined the appropriate standard of review for trial courts' 'sufficient economic incentive' determinations" (citing *Alaska Conservation Foundation*, 350 P.3d at 284 n.60)).

[6] 377 P.3d 939, 952 n.45 (Alaska 2016) (same).

[7] 397 P.3d 312, 315-17 (Alaska 2017).

In my view a sufficient economic incentive determination is one of law, generally made on indisputable facts. As we noted in *Alaska Conservation Foundation*, "the determination rarely should require examination beyond the factual contours of the litigation itself";[8] consideration of the relevant factors — the nature of the claim and relief sought and the possible direct economic interest in the claim[9] — with the known contours of the litigation in mind should lead to a legal conclusion. And, at least in connection with appellate review of trial court determinations, we do not want different results in similar litigation contours simply due to the deferential standard of review we normally afford discretionary determinations.[10] This seems to be the type of determination that an appellate court should control and continuously refine through its independent judgment.

Thus even our own determination of sufficient economic incentive to bring or defend an appeal, regardless of the constitutional nature of the claim on appeal, should consistently be rendered as a legal conclusion rather than as an ad hoc discretionary determination. My agreement with the court's attorney's fees award therefore is based

---

[8]     350 P.3d at 284 n.60.

[9]     *See supra* note 3.

[10]     There has not been a sufficient economic incentive determination by the trial court in this case because the parties agreed to stay trial court attorney's fees proceedings until after our merits appeal decision and then again until after our attorney's fees decision. The approximately $100,000 at stake in Planned Parenthood's appellate attorney's fees determination likely pales in comparison to the attorney's fees at stake in the trial court. But, if sufficient economic incentive were a discretionary determination, it would be possible for the trial court to render a determination contrary to our own and still be affirmed under the deferential abuse of discretion standard of review. *See, e.g.*, *Jackson v. Borough of Haines*, 441 P.3d 925, 931 (Alaska 2019) ("We review an award of attorney's fees for abuse of discretion and will not reverse it unless it is manifestly unreasonable" (quoting *Greene v. Tinker*, 332 P.3d 21, 41 (Alaska 2014))).

on a legal conclusion, not on an exercise of discretion.

As a legal conclusion, I agree with the court's implicit determinations that Planned Parenthood did not have sufficient economic incentive to defend the State's appeal regardless of the claim's constitutional nature and that AS 09.60.010(c)(1) therefore requires awarding Planned Parenthood full reasonable attorney's fees. I first set out the parties' arguments on these issues, and my reasoning follows.[11]

Opposing an attorney's fees award to Planned Parenthood, the State argued that Planned Parenthood's primary purpose in bringing suit on its patients' behalf was obtaining a "guarantee of payment" for abortions that Medicaid no longer would have covered under the challenged laws, i.e., the primary purpose was "reimbursement for

---

[11]    For context, as we stated in *Alaska Conservation Foundation*:

> We look to statements made in the pleadings and proceedings about the rationale for the lawsuit, to whether the relief requested was equitable or legal, and to the amount of money in controversy, to determine whether the litigant had sufficient economic incentive to bring the claim. But the type of relief sought is not always conclusive: "Economic interest need not take the form of damages," and requesting injunctive relief does not guarantee a lack of economic motivation. We also have stated that courts must "look to the facts of the case to determine the litigant's primary motivation for filing the suit." The facts of the case, including the pleadings, relief requested, standing declarations, and types of arguments made during the proceedings inform the determination of primary purpose.

350 P.3d at 282 (footnotes omitted) (first quoting *Matanuska-Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 403 (Alaska 1997); then quoting *O'Callaghan v. State*, 920 P.2d 1387, 1390 (Alaska 1996)).

We further noted that "[s]tanding declarations can be indicative of the claimant's motivations, but standing based on economic harm is 'not synonymous with economic incentive.'" *Id.* at n.41 (quoting *Griswold v. City of Homer*, 925 P.2d 1015, 1030 (Alaska 1996)).

providing abortions." The State claimed that the lawsuit "was about money" even though Planned Parenthood was seeking declaratory and injunctive relief, rather than damages. Citing a Planned Parenthood representative's trial testimony, the State made the following relevant points: Planned Parenthood does not provide free health services to patients without insurance; Planned Parenthood does not subsidize the cost of abortion, i.e., a patient must have a funding source for the full cost or an abortion will not be performed; and, based on 2014 statistics, Planned Parenthood receives payments in excess of $300,000 annually from the State's Medicaid program. The State asserted that this reflects a direct economic benefit to Planned Parenthood. Finally, the State argued that Planned Parenthood's economic interest was "directly proportional to the scale of the alleged burden on women's access to abortion" created by the challenged laws, and that "[s]tripped of its constitutional dimension, this case boils down to a medical practice suing the State to ensure that it gets paid for the medical services that it provides."

Planned Parenthood made the following responsive points based on trial evidence. Only about one-third of the abortions Planned Parenthood provided were for Medicaid-eligible patients. And the State's calculation of payments to Planned Parenthood from the State's Medicaid program was inflated; the State's number was based on an abortion's full charge rather than the more limited Medicaid reimbursement rate of approximately 80%. Planned Parenthood argued that the "record is clear" that its primary motivation in bringing the lawsuit was "to protect the fundamental constitutional rights of its patients and to ensure that Alaska women could continue to receive medically necessary abortion services, regardless of their level of income."

I first consider the nature of the constitutional claims and relief Planned Parenthood sought through this litigation. Planned Parenthood primarily was suing the State under third-party standing to protect the constitutional rights of future indigent

patients, as allowed under our case law.[12] Although Planned Parenthood stated in the standing allegations of its complaint that it brought the lawsuit for itself *and* its future indigent patients, the stated constitutional-related counts and request for relief related solely to patients' constitutional rights.[13] Certainly no individual future indigent patient would have had sufficient resources to bring the complex and expensive lawsuit; it even is questionable whether an individual patient could have both standing and sufficient time to obtain a judicial decree before the issue became moot.[14] And Planned Parenthood entities long have been defenders of women's reproductive rights in Alaska.[15]

Planned Parenthood thus was not seeking to assert its own constitutional rights — assuming it had any to assert — but rather the constitutional rights of future indigent patients. Planned Parenthood prevailed at the trial level and on appeal because the challenged laws violated future indigent patients' equal protection rights under the Alaska Constitution;[16] no constitutional rights of Planned Parenthood were vindicated.

---

[12] *State v. Planned Parenthood of Alaska*, 35 P.3d 30, 34 (Alaska 2001) ("That physicians have standing to challenge abortion laws on behalf of prospective patients seems universally settled . . . ."); *see also Se. Alaska Conservation Council v. State*, 211 P.3d 1146, 1147 (Alaska 2009) (rejecting State's argument that constitutional claimant status is limited to those asserting personal constitutional rights).

[13] *See supra* note 11 regarding distinction between standing declarations and economic incentive.

[14] *But see Roe v. Wade*, 410 U.S. 113, 125 (1973) ("Pregnancy provides a classic justification for a conclusion of nonmootness.").

[15] *See Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122 (Alaska 2016); *Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725 (Alaska 2010); *State v. Planned Parenthood of Alaska*, 171 P.3d 577 (Alaska 2007); *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904 (Alaska 2001); *State v. Planned Parenthood of Alaska*, 35 P.3d at 30.

[16] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 988 (Alaska 2019).

Finally, the lawsuit sought, and obtained, only declaratory and injunctive relief on behalf of future indigent patients, not money damages for Planned Parenthood or anyone else.

I next consider Planned Parenthood's possible direct economic interest in the litigation and appeal. As noted, the lawsuit sought only declaratory and injunctive relief on behalf of future indigent patients. Planned Parenthood prevailed at trial and on appeal, and its relief was limited to declaratory and injunctive relief. No money changed hands as a result of the lawsuit and appeal. But, as the State argued, the nature of the relief sought is not always determinative.[17]

When a party asserts that a constitutional claimant had a direct economic interest in the outcome even though money was not directly at stake, we must determine if the economic interest is so closely connected to the non-monetary relief and so certain that it would be considered direct,[18] or if it instead is unconnected to the non-monetary relief sought and speculative, so that it would be considered indirect.[19] The question thus

---

[17]     *See supra* note 11.

[18]     *Alaska Miners Ass'n v. Holman*, 397 P.3d 312, 317 (Alaska 2017) ("We reiterate and emphasize — again — that *direct* economic benefit is needed for there to be 'sufficient economic incentive to bring the action.' Possible or speculated impact is not enough." (emphasis in original)); *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 285 (Alaska 2015) (emphasizing "the necessity of direct economic benefit from constitutional litigation for 'sufficient economic incentive' "). *Cf. Thomas v. State*, 377 P.3d 939, 952 (Alaska 2016) (concluding, under any standard of review, that litigant bringing employment claims against State and seeking hundreds of thousands of dollars had sufficient economic incentive in litigation regardless of constitutional nature of claim); *DeVilbiss v. Matanuska-Susitna Borough*, 356 P.3d 290, 299 (Alaska 2015) (concluding, under any standard of review, that litigant seeking injunctive relief against future road service tax assessments and credit to his property tax account for previous 20 years' tax collection had sufficient economic interest in litigation regardless of constitutional nature of claims).

[19]     In *Alaska Miner's Ass'n* we specifically noted that "uncertainty or possible future gains or losses do not constitute 'sufficient economic incentive' where the primary purpose of the litigation was to bring constitutional challenges to a ballot initiative." 397

is: Given that Planned Parenthood currently is the only abortion provider in Alaska, is the declaratory and injunctive relief ordered in this case closely connected to a relatively certain profit level sufficient to bring the lawsuit (and defend the appeal) regardless of the constitutional nature of the claims?[20] I conclude that the State's argument that this entire litigation really is about Planned Parenthood protecting an income stream is unpersuasive.

First, the State overstates the economic impact to Planned Parenthood. Assuming — using the State's 2014 statistics and an 80% reimbursement rate — that the ruling would lead to payments of about $250,000 annually to Planned Parenthood, this represents only a gross income figure, not a net profit figure accounting for costs. And — although the State has argued that the challenged laws would not have eliminated every payment, only payment for "elective" and not "medically necessary" abortions — that full amount would be at stake only if *every* woman seeking Medicaid payment for an abortion would have been denied that payment under the challenged laws and then been unable to find an alternative funding source, such as family, friends, or grant money discussed at trial.

Second, the Medicaid payment amount to Planned Parenthood could differ at any time due to changes in circumstances, such as another provider appearing. It

P.3d at 317. We further stated that there never has been a requirement that a constitutional claimant "be completely disinterested in the case." *Id.* Doing otherwise "would likely eliminate the constitutional-claimant rule altogether." *Id.*

[20] Planned Parenthood asserted that its non-profit organizational status supports its lack of direct financial benefit. The State correctly responded that non-profit status does not necessarily mean an entity cannot have sufficient economic interests to motivate litigation. Non-profit status does not mean than the entity eschews profits; it simply means that profits, if any, remain with the entity for its mission rather than being distributed to shareholders. *See, e.g.*, AS 10.20.136 (prohibiting non-profit corporation from issuing stock, paying dividends, and distributing income or profits to members, directors, or officers).

would be speculative, at best, to say that the successful lawsuit and defense of the State's appeal necessarily will lead to material future profits that Planned Parenthood otherwise would not have received under the challenged laws, or that the speculative future profits could justify the hundreds of thousands of dollars Planned Parenthood invested defending its indigent patients' constitutional rights.[21] The limited economic benefit to Planned Parenthood thus is indirect and not, as required in the sufficient economic incentive analysis, directly resulting from the litigation.

In conclusion, it is evident that the litigation's primary purpose, the bedrock of the sufficient economic incentive analysis, was not direct economic gain, but rather the vindication of indigent Alaska women's constitutional rights. Planned Parenthood therefore is entitled, as a matter of law, to a full reasonable attorney's fees award under AS 09.60.010(c)(1).

---

[21] *See supra* notes 18 and 19.

STOWERS, Justice, concurring.

Because I have concluded the statute and regulation which are the subject of the main appeal are not unconstitutional,[1] I also conclude Planned Parenthood of the Great Northwest should not have been the prevailing party. But I recognize a majority of the court reached the opposite conclusion, and therefore Planned Parenthood is in fact the prevailing party. As such, I cannot disagree with the order awarding it attorney's fees, costs, and travel expenses.

---

[1] *State v. Planned Parenthood of the Great Northwest*, 436 P.3d 984, 1005-09 (Alaska 2019) (Stowers, Chief Justice, dissenting).